STATE OF MISSOURI at the relation of ST. LOUIS CAR COMPANY, a Corporation, Relator, v. WILLIAM C. HUGHES, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals of the City of St. Louis.—152 S. W. (2d) 193.

Division One, April 18, 1941.

Rehearing Denied, June 12, 1941.

*Watts & Gentry* and *Lehmann & Lehmann* for relator.

*Vincent M. Flynn, S. F. Pinter* and *W. L. Mason, Jr.,* for respondents.

 DALTON, C.—This is an original proceeding in certiorari to review for alleged conflict the decision of respondents in the case of Stephen Slabon v. St. Louis Car Company, a Corporation (Mo. App.), 138 S. W. (2d) 673. In ▮▮▮▮ the trial court, plaintiff obtained a verdict and judgment, and defendant appealed. The judgment was affirmed by respondents.

In determining the question of conflict we are limited to the facts stated in the opinion. Respondents' statement is rather long. Briefly, respondents stated the facts as follows: The petition alleged that plaintiff, in the course of his employment, suffered a rupture for which he claimed defendant was liable; that in consideration of his signing a paper prepared by defendant, absolving defendant from liability, defendant agreed to give plaintiff lifetime employment; that plaintiff performed, but defendant breached the alleged contract, for which damages were prayed. The defendant's answer was a general denial.

Plaintiff testified that he was ruptured while at work in defendant's plant; that his foreman told him to go to defendant's physician, in said plant, and plaintiff went; that the physician examined him, told

him he was ruptured and directed him to go home and return in a few days, which he did. He testified that when he so returned he said to the physician, "I got some demands;" that the physician told him he would speak to the president of the company, and told him to return a few days later, which he did; that the physician then told him he would get compensation, provided he signed a paper; that he had to sign the paper and he would get a lifetime job, and that the physician said before he could go back to work he would have to get a truss and would have to sign that paper in order to get a lifetime job. He signed the paper, Exhibit A, set forth in respondents' opinion; defendant furnished him with a truss and he resumed work. Later the truss broke and the company gave him a new one. This truss wore out, and the physician advised an operation. Before he went to the hospital plaintiff talked with the president, who told him he should permit himself to be operated on and that he would get $15 a week for his wife, "and that I would have a lifetime job; that I would always get that." Plaintiff was then operated on in the City Hospital. Defendant refused to let him return to work.

Plaintiff gave his testimony in the Hungarian language and it was translated by an interpreter. On cross-examination plaintiff was asked "to tell in English exactly what he said to the doctor and what the doctor said to him, but he stated that he could not remember the words because he was unable to speak enough English to remember the words the doctor used." He said he could not read, and never asked anybody to read Exhibit A to him; that it was handed to him in defendant's office and he was told to sign it, and was told "you get a lifetime job." Other facts will be stated in the course of our opinion or may be had by reference to respondents' opinion, 138 S. W. (2d) 673.

In their opinion respondents found that the question for decision by them was whether there was a substantial basis in the evidence for the jury's verdict on two propositions, to-wit, consideration for, and authorization of, the contract for life employment.

Respondents said: "Defendant contends that the court erred in overruling its demurrers to the evidence because there was no consideration for the making of the alleged oral contract for life employment; and further that plaintiff failed to show that defendant entered into said oral contract through an authorized agent of defendant."

In determining the questions before them, respondents correctly stated the general rule as follows: "We must therefore apply the long-established rule and take plaintiff's evidence as true where it is not unreasonable or contrary to well-known physical laws, give plaintiff·the benefit of favorable inferences arising from all of the evidence, and disregard defendant's evidence where it is in conflict with plaintiff's evidence. [Armstrong v. Mobile & Ohio Railroad Co., 331 Mo. 1224, 55 S. W. (2d) 460.]"

Respondents reached the conclusion that, under all the evidence, the trial court's action in overruling defendant's demurrers to the evidence was correct. Considering the first of the two propositions presented, to-wit, consideration, respondents, with reference to the pleadings, said: ''Plaintiff's petition alleges that . . . in consideration for the signing by plaintiff of a certain paper prepared by defendant and absolving defendant from liability to plaintiff for such injuries, defendant agreed to give plaintiff steady employment during the period of his natural life as long as defendant's plant should be in operation. Plaintiff further alleged that he signed the paper, performed his part of said agreement by refraining from holding defendant liable in damages.''

With reference to the evidence on this issue, respondents said: ''The doctor told him he would get compensation provided he signed a paper; that the doctor told him he had to sign the paper and he would get a lifetime job; that the doctor said before he could go back to work he . . . would have to sign the paper in order to get a lifetime job; that he signed the paper; . . . During the cross-examination defendant's Exhibit A was shown to plaintiff and he testified that he signed it, but that he could not read it; that he never asked anybody to read what was above his name thereon; that the paper was handed to him in the main office of defendant; that Dr. Rosenfeld was there when he signed his name; that Dr. Rosenfeld told him to sign the paper, and that Dr. Rosenfeld said in English, 'You get a lifetime job.' . . . That the doctor said to him, 'You go right away to the drug store and buy a rupture belt, and first you go into the office and you must write up the paper;' and that the doctor told him what kind of a paper and said to him, 'You get a paper for a lifetime job.' Plaintiff was asked, during cross-examination, to tell in English exactly what he said to the doctor and what the doctor said to him, but he stated he could not remember the words because he was unable to speak enough English to remember the words the doctor used.''

Since respondents stated the rule requiring them to take plaintiff's evidence as true, give plaintiff the benefit of favorable inferences arising from all of the evidence, and to disregard defendant's evidence where it conflicts with plaintiff's evidence, we must assume they did so. In so doing respondents would have disregarded the evidence of defendant's witness Schuchard ''that he (witness) read the paper to plaintiff because plaintiff could not read, and he explained it to plaintiff; that plaintiff acknowledged that he understood what witness was telling him, and signed the statement in the presence of the witness.'' In disregarding this evidence respondents were following the general rule that ''plaintiff is entitled to the benefit of any evidence offered by defendant which tends to support his theory of the case, and is consistent with his own testimony, but he cannot

claim the benefit of any of defendant's evidence which contradicts his own testimony and is at war with his own theory of the case." [Elkins v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600, 603-604; Murray v. Transit Co., 176 Mo. 183, 189, 190, 75 S. W. 611; Graefe v. Transit Co., 224 Mo. 232, 264, 123 S. W. 835; Messe v. Thompson, 344 Mo. 777, 129 S. W. 847, 850.]

The paper which was signed by plaintiff, and witnessed and acknowledged, contained the following provision: "I, Steven Szlabon, having made application to the St. Louis Car Company for employment, and upon being examined it was found I have hernia inguinalis right; marked disposition left. In accepting employment with the said company I hereby agree that no claim will ever be made by me or on my behalf against the St. Louis Car Company on account of sickness, injury or death, for which the above-described ailment, injury or condition is the sole or contributing cause. It is understood by me and I have been so informed by the company that I am not acceptable as an employee except on this condition." In commenting upon this instrument, respondents said: "Plaintiff signed the paper in which appears a statement indicating that plaintiff was then making application for employment, which is not borne out by any of the evidence, it being conceded by all parties that plaintiff had been employed by defendant for many years prior thereto."

The respondents, in ruling the question as to whether the trial court erred in overruling defendant's demurrer to the evidence, on the question of lack of consideration, expressly held that, under the facts and circumstances stated in the opinion, a case was made for the jury. Respondents said: "There was ample evidence from which the jury could properly find that plaintiff signed defendant's Exhibit A in return for the oral promise of a lifetime job at defendant's plant. By signing that document plaintiff clearly agreed to refrain from making a claim for injuries which he alleged he sustained while in defendant's employ. Plaintiff's evidence shows he performed said agreement. An agreement by plaintiff to forego his right to make a claim against defendant, growing out of his injuries, was a valuable consideration for defendant's oral agreement to give plaintiff a lifetime job."

Relator contends that respondents' holding that the evidence concerning the signing of the document by plaintiff under the circumstances stated was ample evidence from which the jury could find that plaintiff made an *agreement* to refrain from making a claim against defendant and *agreed* to forego his right to make a claim for his injuries, and respondents' holding that *such agreement* was a valuable consideration for defendant's oral agreement to give plaintiff a lifetime job, is in direct conflict with the decision of this court in the case of Huttig v. Brennan, 328 Mo. 471, 41 S. W. (2d) 1054, 1062. That case involved an alleged written contract for the

transfer of lots and leases as consideration for the notes sued on. The court held there was no evidence to show that the parties to the alleged written contract "ever came to any agreement about what lots and leases respondent was to get," as they were not identified in any way in the contract. The court then set out certain fundamental rules concerning contracts, quoting from 13 C. J. 263, sec. 48, as follows: "In order that there may be an agreement the parties must have a distinct intention, common to both, and without doubt or difference. Until all understand alike there can be no assent and therefore no contract. Both parties must assent to the same thing in the same sense and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement." Also, quoting from 6 R. C. L. 677, sec. 84, as follows: "In order that mutual promises may serve as a consideration for each other, they must be mutually binding. No promise constitutes such a consideration which is not obligatory upon the party promising. It must bind the promisor, so that the promisee may maintain an action for its breach, or it is without legal effect and void" After stating the above rules of law, the court held: "In short, if one of the parties is not bound, neither is. Therefore, if there was no agreement or understanding as to what property respondent and Quinsby were contracting for, there was no meeting of their minds on the essential part of the contract. In that case the document of October, 1924, was not a contract at all and there was no consideration for respondent's notes." The case, therefore, held that there could be no agreement where the minds of the parties did not meet; and that, where the minds did not meet, there was no agreement of the one to be consideration for the agreement of the other.

Relator insists that, upon the facts stated in respondents' opinion, plaintiff made no *agreement* by signing the document, because upon his own testimony he could not read it, did not ask anyone to read it to him, and did not know what it contained. Relator says that plaintiff testified he did not know enough English to tell what the doctor said to him; that, upon his own testimony, he had no intent or purpose to make an *agreement* by signing the paper; that he could not have *agreed* to refrain from making a claim or agreed to forego any rights against defendant, because he did not know the terms of the paper he signed; that the exhibit contains no such agreement; and that there was no meeting of the minds of the parties and no valid contract upon the facts stated by respondents.

Relator further contends that, upon the facts stated by respondents, the signing of the document by plaintiff, did not bind plaintiff; that it did not release any cause of action against defendant; that plaintiff could have sued defendant at any time, regardless of the signing of the paper, if defendant was liable for his injuries; and that, since

plaintiff was not bound by signing of said paper, there was a total failure of consideration for the oral agreement for a lifetime job. Relator says that respondents' holding that the signing of the document by plaintiff, under the facts stated, was ample evidence from which a jury could find such an agreement was made and was consideration for defendant's agreement conflicts, not only with Huttig v. Brennan, supra, but also with our decisions in Hudson v. Browning, 264 Mo. 58, 65, 174 S. W. 393, and George v. C., R. I. & P. Ry. Co., 214 Mo. 551, 559, 113 S. W. 1099.

In reply to relator's contentions, as set out supra, the brief filed on behalf of respondents contains the following statement: "If the testimony of the plaintiff is true, both the doctor and the president understood exactly what the plaintiff wanted, that is, a promise of lifetime employment, and defendant received exactly the consideration which it desired, that is, the signing of Exhibit A . . . Exhibit A, of course, does not amount to a release. It does not purport to be a contract . . . The exact wording and significance of the paper signed is of no controlling consequence. He was not told that he must sign a valid release. According to his testimony, which for the purpose of this proceeding must be taken to be the truth, he was not told anything about the contents of the paper, but ▮▮▮ simply that if he would go to the office and sign the paper he would have a lifetime job."

Respondents' brief further states that "the question as to whether or not there was a meeting of the minds of the parties on the subject matter of the contract was not discussed" in respondents' opinion; that no question as to meeting of minds was decided; but that on the facts stated in the opinion it is obvious there was a meeting of minds. It is further insisted that "whether or not Exhibit A constituted a valid release of the plaintiff's cause of action, if any, was not discussed in the opinion of the Court of Appeals under consideration. The paper was not sued on as a release. It was not referred to in the opinion as a release and clearly in and of itself it would not constitute a release. It is not in any sense a complete contract." Later, it is contended that "it needs no argument to show that plaintiff's agreement not to make such claim was a valid and sufficient consideration for the defendant's oral agreement to give the plaintiff a lifetime job, and there was no indefiniteness whatever as to the agreement of either party." Respondents further contend that the opinion states no general propositions of law contrary to our decisions and it announces no conclusion contrary to our ruling on similar or analogous states of fact, and that there is no conflict.

It is apparent from respondents' brief there is no contention here that the statement in respondents' opinion, "that the doctor said to him (plaintiff) . . . 'first you go into the office and you must write up the paper;' and that the doctor told him what kind of a

paper and said to him, 'You get a paper for a lifetime job,' '' was any statement of evidence to indicate that plaintiff knew the content, meaning or purpose of the document prepared by defendant which plaintiff signed, or that by signing the paper he intended to enter into a contract or to make a promise or agree to refrain from making a claim or to forego his right to make a claim. Respondents rely only on the fact of the signing of the exhibit as evidence that there was a meeting of minds.

The general rule is that a person who is *sui juris*, in full possession of his faculties, able to, and with ample opportunity to read, and who intentionally signs a paper, is, in the absence of fraud or mistake, conclusively presumed to know its contents and cannot be heard to say that it did not express the real contract (Brennecke v. Ganahl Lumber Co., 329 Mo. 341, 44 S. W. (2d) 627, 630; Dyrssen v. Union Electric Light & Power Co., 317 Mo. 221, 295 S. W. 116; Crim v. Crim, 162 Mo. 544, 552, 63 S. W. 489). In this case, on respondents' theory, only the promise of plaintiff. was written, but there is evidence that plaintiff could not read and there is no evidence of any intent or purpose by plaintiff to enter into a contract or forego any rights at the time he signed the paper. The instrument is not sought to be enforced against plaintiff, but to be used by him. He seeks to use it as an instrument *absolving defendant from all liability to plaintiff for injuries alleged to have been received while in defendant's employment* and, therefore, as consideration for the oral promise upon which his suit for breach of contract is based  The instrument upon its face, however, purports to be something else, to-wit, a statement indicating that plaintiff was then making application for employment, which was not borne out by any evidence, all as stated by respondents in their opinion. The instrument, on its face does not even purport to be a release of any claim for injuries received while in defendant's employment, nor on account of the coming into existence of the hernia itself, nor of any present existing claim. On the other hand it represents that the hernia existed prior to the employment and that on application for employment plaintiff was not acceptable, except on condition that no claim be made for any sickness, injury or death to which such condition might contribute or be the cause. It related to injury in future employment only and not to any injury during past employment.

Respondents' brief contends the document signed by plaintiff was not a fully expressed written agreement between the parties, but only an agreement that he would not make a claim for his hernia against the defendant; that the full agreement was not in writing; that the paper was only signed by plaintiff and defendant did not therein agree to do anything; that the instrument ''was simply an agreement on plaintiff's part, which he signed in consideration for the oral promise to give him a lifetime job;'' in effect, that the contract was part written

and part oral and plaintiff's promise was written and defendant's ▮▮▮ was oral. However, the use sought to be made of the paper by plaintiff does not correspond with its terms, and according to his testimony he did not intend to make such a contract or promise, nor a release in consideration of an oral promise of life employment, but only to sign a paper. The general rule, above stated, as to a presumption of knowledge, therefore, does not apply here to the document signed by plaintiff and, if it did, plaintiff would not be aided thereby, in view of the particular terms of the written document itself.

▮ According to the petition, the consideration for the alleged oral agreement for lifetime employment, which agreement was sued on by plaintiff, was "the signing by plaintiff of a certain paper . . . absolving defendant from liability to plaintiff for such injuries." To absolve means to set free, or release, as from obligation, debt, or responsibility. [See, Webster's New International Dictionary (2 Ed.).] The petition therefore pleaded mutual promises or agreements, the one as consideration for the other, the promise of plaintiff to release defendant as consideration for the promise of defendant of a lifetime job. Respondents held that the evidence stated in their opinion was ample from which the jury could properly find that plaintiff signed Exhibit A in return for the oral promise of a lifetime job and that by signing the document, Exhibit A, plaintiff clearly agreed to refrain from making a claim against defendant on account of the injuries, which he alleged he sustained while in defendant's employment.

We think that respondents' holding that "there was ample evidence from which the jury could properly find that plaintiff signed defendant's Exhibit A in return for the oral promise of a lifetime job" and that "by signing that document (defendant's, Exhibit A), plaintiff clearly agreed to refrain from making a claim for injuries which he alleged he sustained while in defendant's employ," in effect, announced an erroneous rule of law, since it holds that such an agreement was made by the signing of the document, and regardless of the terms of the instrument itself and of facts shown, to-wit, that plaintiff didn't read the instrument, couldn't read it, it was not read to him, he didn't know its content, and he had no intent or purpose to make any agreement or release any rights. In addition, there was no evidence that defendant's agents did not understand the exhibit as it was written. On the facts stated in the opinion, there was no meeting of minds, and no promise or agreement by plaintiff, and no consideration for the oral promise of defendant, and respondents' opinion directly conflicts with the holding in the Huttig case, supra, and with the case of Gillen v. Bayfield, 329 Mo. 681, 46 S. W. (2d) 571, 574, where it was held that "the essential elements of a contract are: '(1) Parties competent to contract, (2) a subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obliga-

tion.' [13 C. J. 237, sec. 1.]'' In any case, the signing of Exhibit A by plaintiff, in view of its terms, under the facts stated by him, and as set out in respondents' opinion, imposed no legal obligation upon the plaintiff to release defendant from any claim for *injuries sustained "while in defendant's employ."* It did not purport to deal with any such injuries; and the signing of said exhibit by plaintiff did not constitute a binding promise or agreement on his part to refrain from making such a claim and, therefore, there was no consideration for any oral agreement by defendant. Respondents' holding that, if there was ample evidence the paper was signed, even under the circumstance stated in their opinion and in view of its conceded terms, an agreement (a promise) was made by plaintiff to refrain from making a claim for injuries which he alleged he sustained while in defendant's employ, and that such agreement was consideration for defendant's oral promise sued on by plaintiff, conflicts with the rulings made in above decisions of this court stating what are essential elements to constitute a valid contract.

Since the opinion of the St. Louis Court of Appeals contravenes the decisions of this court, as above mentioned, the record and judgment of that court is quashed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.