STATE OF MISSOURI ex rel. STEPHEN A. KAIMANN, Relator, v. WILLIAM C. HUGHES, EDWARD J. MCCULLEN and LYON ANDERSON, Judges of the St. Louis Court of Appeals.—No. 38926.—181 S. W. (2d) 524.

Court en Banc, July 3, 1944.

*Spencer M. Thomas* and *Harry Gershenson* for relator.

*Murtha J. Hackett* and *Dublinsky & Duggan,* for respondents.

1190

 HYDE, J.—Certiorari to quash opinion of St. Louis Court of Appeals in Kaimann Bros, Inc., 175 S. W. (2d) 66, which was an unlawful detainer action.

The following facts (material to the points raised herein) were stated by the Court of Appeals. Relator was the owner of buildings occupied by Kaimann Bros., Inc., in the operation of a motion picture theatre. The corporation was owned by relator's sons Clarence and William. Clarence was the corporation's president. The brothers disagreed and relator sided with Clarence in the quarrel. Apparently, to force William out of the business, relator undertook to terminate the tenancy of the corporation. This was done either at the instigation of Clarence or with his knowledge and consent. To carry out this purpose, relator had a notice prepared to terminate the month to month tenancy in accordance with Sec. 2971 (R. S. 1939) Mo. R. S. Ann. This notice was directed to "Kaimann Bros., Inc., 4026 West Florissant Avenue, Clarence H. Kaimann and William J. Kaimann, doing business as O'Fallon Theatre, 4026 West Florissant Avenue, and Clarence H. Kaimann and William J. Kaimann, individually." This notice was properly served on William. The Court of Appeals held that it was not properly served on the corporation against which the unlawful detainer suit was prosecuted to judgment.

The facts about this service are stated by the Court of Appeals as follows: "As for the manner in which the alleged service was obtained, plaintiff testified that he walked into Clarence's office in company with his son, Francis; that Clarence was 'very busy' at his desk; and that without a word being spoken by anyone, he merely laid what he thought was two copies of the notice upon Clarence's desk, and then immediately turned and left the room. In other words, plaintiff admitted that he did not hand the notices to Clarence personally; that there was no discussion of any sort between them; and that there was not a word to indicate what it was he was putting on the desk.

"Although he was an individual defendant as well as the president of the defendant corporation which was to be ousted from the premises, Clarence himself testified as a witness for plaintiff, and corroborated the fact that all his father did by way of serving the notice was to lay it on his desk without any conversation being had between them. He denied, however, that his brother Francis was along; and he stated that it was his recollection that but a single copy of the notice was left with him, in which he was supported by the fact that but a single copy was produced at the trial. . . . There is no dispute about the fact that effective personal service upon Clarence,

if obtained upon him in his capacity as president of the corporation, would have been binding upon the corporation; *nor is to be doubted but that he was personally aware of what was being attempted in the way of service,* in view of the fact that the controversy, while nominally between plaintiff and the corporation, was primarily between him and his brother William." (Our italics.)

Upon these facts, the Court of Appeals thus ruled: "To constitute good personal service, the person to be served must, in some substantial form, be apprised of the fact that service is intended to be made (50 C. J. 482), and such manner of service, in the absence of statutory qualification, contemplates the actual or direct delivery of the writ or notice to the person to whom it is directed, or else to someone who is authorized to receive it in his behalf. 42 Am. Jur. Process, Secs. 48, 51. Moreover, the sufficiency of service in a particular case will not be determined by the incidental fact that the person to be served may have otherwise had actual knowledge that service upon him was attempted. . . . Clarence was unquestionably present in the office so as to have made it essential that he be the person served; and under all the circumstances we cannot believe that personal service was accomplished by plaintiff's act in merely laying the notice upon Clarence's desk without a word being said explanatory of his purpose or of the nature and contents of the paper itself. An actual or direct delivery contemplates something more than this if the service is to be effective, and especially so where it is sought to hold the corporation by leaving the paper with a person whom while he happened to be the president of the corporation, was at the same time named twice in the body of the notice as an individual upon whom service was to be obtained. . . .

"In providing for service upon a corporation by service upon some one of its designated representatives, the law contemplates that the representative will be one who will appreciate his official responsibility, and will perform his duty of communicating the fact of service to the proper parties to the end that appropriate steps may be taken to protect the corporation's interest. It does not contemplate that his personal interest shall be antagonistic to that of the corporation which he represents, or that he shall be expected to cooperate with the plaintiff in an attempt to bind the corporation by an admission of service, when in truth and in fact the essentials of personal service upon him were not complied with. Consequently, when his individual interest is adverse to that of the corporation, there is an apt situation for strict adherence to the rule that the sufficiency of the *service is not to be aided by the incidental fact that he may have otherwise had actual knowledge that service upon him was being attempted,* but that instead it must depend for its validity upon the fact that it was obtained in the proper manner." (Our italics.)

Relator claims several grounds of conflict, but the substantial one is whether the ruling was in conflict with a principle of law established by this court, and plainly applicable under the circumstances, in holding as a matter of law that the service attempted was ineffective to give notice to the corporation. This is a sufficient ground for invoking certiorari for conflict of decision. [State ex rel. Continental Life Ins. Co. v. Trimble, 327 Mo. 781, 38 S. W. (2d) 1017; State ex rel. Metropolitan Life Ins. Co. v. Allen, 337 Mo. 525, 85 S. W. (2d) 469; State ex rel. Security Benefit Assn. v. Shain, 342 Mo. 199, 114 S. W. (2d) 965; State ex rel. Metropolitan Life Ins. Co. v. Shain, 343 Mo. 435, 121 S. W. (2d) 789; State ex rel. St. Louis Car Co. v. Hughes, 348 Mo. 125, 152 S. W. (2d) 193.] In Peterson v. Kansas City, 324 Mo. 454, 23 S. W. (2d) 1045, construing a statute requiring service of a notice upon the mayor as essential to maintaining an action against the city, we held that while personal service was necessary acknowledgment by an assistant city counselor, in accordance with long established custom, was good when actual notice thereof was thus conveyed to the mayor. We said: "The statute provides merely that 'notice shall first have been given in writing to the mayor'; as the manner of service is not prescribed, personal service is required. 20 R. C. L. 343. But *where notice is actually conveyed to the person to be notified,* as by service on a duly accredited agent, *this is sufficient*. 20 R. C. L. 356. . . . It is plain therefore that, if the city counselor and his assistants were authorized by the mayor to accept and acknowledge service of such notices for him, personal service on one of them would be personal service on him."

The president of a corporation is its duly authorized agent, its chief agent, and as the Court of Appeals properly held he is the person to be notified. [See 887 (R. S. 1939) Mo. R. S. Ann.] Certainly then he could acknowledge service. We, therefore, see no reason why he could not "bind the corporation by an admission of service" when "he was personally aware of what was being attempted in the way of service", having "actual knowledge that service upon him was being attempted", knowing what was in the notice and the purpose of serving it. When he knew all this, it is difficult to see what else could have been done to give him more notice than he had. Under these circumstances, when he saw the notice placed on his desk, it seems clear that to rule, "the sufficiency of the service is not to be aided" by the fact that the proper person to be served "may have had actual knowledge that service upon him was being attempted", in effect announces and applies an erroneous rule of law. This ruling contravenes our ruling in the Peterson case that "where notice is actually conveyed to the person to be notified . . . this is sufficient." Certainly this is true when he knows what is being attempted, and its purpose, of his own knowledge rather than merely knowing it through an agent.

The principle involved is that receipt of a notice with actual knowledge of its contents and purpose is sufficient.

The opinion notes, and respondents' brief stresses, that the notice was directed to the brothers individually as well as to the corporation. However, the Court of Appeals did not hold that there must be a separate notice to the corporation, naming it only. It based its ruling solely upon insufficiency of the service, not on insufficiency of the notice. It found as a fact that Clarence knew of relator's purpose to notify the corporation and to terminate its tenancy by this notice and saw it placed on his desk. Although this was a purpose in which Clarence concurred, perhaps from improper motives as the opinion intimated, this could not alter the fact that he (the proper officer to be served with notice) did actually get the notice and knew that he got it. The opinion also seems to intimate that no service on the president of a corporation should be held effective if its purpose is adverse to the corporation and he agrees with it; but this is obiter (and not ground of conflict as relator contends) because the decision is not really based on any such ground.

Of course, if Clarence and his father had fraudulently conspired to conceal from William the fact that a notice was served and thus terminated the tenancy without his knowledge so as to prejudice his rights, and deprive him of the opportunity of making his defense, the whole transaction might be vitiated by such fraud. But that did not happen. A copy of this same notice was served on William at that time. He had an opportunity to and did make a defense on the merits (on the ground that it had a long term lease) for the corporation. Thus not only Clarence, the proper officer to be served, had actual knowledge of what was being done, but also William, the owner of the remaining substantial interest in the corporation, likewise had such knowledge. William's real grievance is not the fact of service of this notice on the corporation but is instead the purpose behind it of his father and brother in their conspiracy (as he claims) to force him out of the corporation. If they have acted fraudulently to his detriment he may have a remedy against them on that ground.

It is ordered that the record and opinion of the St. Louis Court of Appeals in the case of Kaimann v. Kaimann Bros., Inc., be quashed. All concur.