588

LITTLE BLACK DRAINAGE DISTRICT, APPELLANT, v. ZILPHA ROBB, ET AL., RESPONDENT.—240 SW (2) 167.

Springfield Court of Appeals.   May 16, 1951.

*Phillips & Phillips* for Appellants.

*Bloodworth & Bloodworth* for Respondents.

McDOWELL, J.—This is an action for the formation of a drainage or levee district, under provisions of Article 7 of Chapter 79, R. S. Mo. 1939, and acts amendatory thereof. The petition was filed in the Circuit Court of Ripley County, Missouri, July 16, 1949. Exceptions were filed denying all of the allegations in the Articles of Association by the defendant-landowners and motions to dismiss. The court dismissed plaintiffs' petition. From this judgment petitioners appeal.

In this opinion we will refer to the appellants, petitioners, as plaintiffs and to the respondents, exceptors, as defendants.

The petition stated the name of the proposed district, the number of years the same was to continue, the boundary lines of the proposed drainage or levee district, the names of the landowners or other individual or franchise property in said district, together with a description of the land; and it further stated that the owners of the real estate in such district, whose names were subscribed to the petition, were willing to, and did, obligate themselves to pay the tax or taxes which might be assessed against their land or other property for paying the expenses of organizing the district, and of making and maintaining the improvements that might be necessary to reclaim or protect said lands.

The defendants, exceptors, filed exceptions denying generally all statements and allegations of said articles of association.

The evidence, on the part of petitioners, shows that the articles of association were exhibited to every person signing said petition; and that they were given an opportunity to read said articles. There was no testimony that the signers were unable to read or were misled by the persons obtaining their signature on the petition.

Petitioners' evidence showed that Little Black River in Ripley County, Missouri, is subject to frequent floods and during such flood periods, the river is very destructive and overflows a great portion of the land included in the proposed levee district. The evidence, on the part of petitioners, showed that the petition was signed by 165 landowners, which number of petitioners represented the majority of landowners in the area sought to be included in said district, and that these landowners owned a majority of the acres in said proposed district. The testimony on the part of petitioners was to the effect that the land in this district would be greatly benefited by the formation of this drainage district for the purposes of constructing a levee. Petitioners' testimony also was to the effect that it would be possible to remedy the proven flood conditions on Little Black River of the land in question.

We think the evidence is undisputed that this drainage district was being organized for the purpose of having the United States Government construct improvements by erecting a levee. In order to get this improvement made it was necessary that a drainage district be organized to secure a right-of-way for levee purposes and to maintain the levee after it was built by the government.

The evidence showed that public meetings had been held, discussing the organization of this drainage district and the feasibility of having the government construct a levee to protect the lands located in said district; that it was understood that the drainage district would have to pay the cost of the organization of the district and for the necessary right-of-way for said levee and for the maintenance of the improvements, if made. We think that the statement made in plaintiffs' brief, to-wit: ''It was further proven that in order to obtain the

Government aid, aforesaid, that it is necessary that there "be some legal entity with whom the Government can deal in making this type of improvement * * *" is a correct statement. We think the evidence in the case substantially showed that persons signing the petition knew of the government's requirements and also knew that they would not be required to pay for the construction of the levee.

The exceptors introduced evidence to the effect that the suggested improvement of erecting a levee on Little Black River would not benefit the landowners in said proposed levee district. They also introduced evidence that 63 of the landowners, who signed the articles of association to form this drainage district, were opposed to the formation thereof and that these landowners did not obligate themselves to pay the tax or taxes which might be assessed against their land or other property for paying the expense of the organization of said district and for making and maintaining the improvements necessary to reclaim or to protect said land. These 63 landowners filed exceptions and also signed the articles of association. They admit that the individuals who solicited them to sign the articles of association had attached to the petition, they signed, an exact copy of the articles of association. Some of them testified they understood that the levy of twenty-five cents an acre would be made against their lands for paying the expenses of the incorporation but they did not consent to obligate themselves for any further expenses. They all admit they voluntarily signed the petition to have the district incorporated but they state they thought the government was to pay all the other expenses. They do not deny they attended meetings where all the matters pertaining to the organization of this drainage district were discussed nor do they claim they were deceived by those landowners who circulated the petition. The evidence showed that several different landowners circulated petitions to have the district incorporated and each petition had attached to it the articles of association, which they were permitted to inspect and read if they chose.

At the end of the hearing the trial court adjourned to let the parties agree on certain facts and they filed two exhibits, "Y" and "Z". Exhibit "Y" is a list of names of persons who did not sign the articles of association and the number of acres of land owned by each in said district. Exhibit "Z" contained a list of names of parties who signed the articles of association but state they did not intend to obligate themselves for the entire cost of the improvements as contained in the heading thereto and the number of acres of land owned by each of them.

From this evidence, the court found that the number of acres sought to be incorporated in Little Black River Drainage District comprised a total of 28,151.36 acres. The court found that those signing the articles of association represented 17,224.86 acres of land within said area, or 3,149.18 acres of land over half of the acreage involved.

The court then found that 63 persons who signed the articles of association represent the objectors and now are protesting and objecting that they were not fully cognizant of their obligation and that they are not willing to obligate their land and themselves to pay the tax or taxes which may be assessed for making the improvements; that these 63 persons owned 5,858 acres of land in said drainage district. The court found that the number of acres of land owned by the signers of the articles of association, less the acreage of the 63 persons now objecting, totals 11,366.86 acres or 2,708.82 acres less than half of the acreage involved in the area. The court found that petitioners had failed to meet the burden of proof required under section 12492 R. S. Mo. 1939, in that they failed to prove that the owners of the majority of acreage involved in the proposed drainage district are willing to obligate their land and themselves for the cost of organization of the district and that petitioners have further failed to prove that their plan will reclaim or protect the area in question and denied the prayer for incorporation.

The first assignment of error on the part of plaintiffs, stated under points and authorities, is that the owners of a majority of the acreage in the area of the proposed levee district did not sign the petition.

We agree with plaintiffs under this contention. The trial court makes a very fair statement of the facts upon which he based his judgment. He found that the total acreage in the proposed incorporated drainage district amounted to 28,151.36 acres. He found that the owners of land who signed the articles of association represented 17,224.86 acres, which acreage amounted to 3,149.18 acres more than half of the area involved in the district.

The court then found that 63 persons who signed the articles of association were not fully cognizant of their obligations and were not willing to obligate their lands and themselves to pay tax or taxes assessed for making the improvements. He found that the acreage owned by these 63 persons amounted to 5,858 acres which, when subtracted from the 17,224.86 acres, left only 11,366.86 acres or 2,708.82 acres less than half of the total acreage involved in the district. From this testimony he found that plaintiffs had failed to prove that the owners of a majority of the acreage involved in the proposed drainage district were willing to obligate their land and themselves for the cost of organization thereof.

Section 12495 R. S. Mo. 1939, Mo. R. S. A. Sec. 12495, now being Section 245.025 R. S. Mo. 1949, provides who might file objections. It states:

"Any owner of real estate or other property as herein described, in said proposed district, who may not have signed said articles of association, objecting to the organization and incorporation of said levee district may, within forty five days after the date on which said articles of association and petition were filed, file his objection or

objections why such levee district should not be organized and incorporated. Such objection or objections shall be limited to a denial of the statements in the articles of association, and shall be heard by the court in a summary manner, without unnecessary delay, and in case all such objection are overruled the circuit court shall, by its order duly entered of record, duly declare and decree said levee district a public corporation of this state, for a term not exceeding the time mentioned in said articles of association signed and filed. If the court finds that the land set out in said articles of association should not be incorporated into a levee district, it shall dismiss said proceedings and adjudge the costs against the signers of said articles of association in proportion to the acreage represented by each. Any person having signed the articles of association shall have no right to have said proceedings dismissed as to him without the written consent of the majority in acreage of the owners who signed said articles. * * *''

We think the court's finding that the 63 landowners who signed the articles of association could object and have their lands removed from the articles of association so as to reduce the acreage below the majority of the acreage involved was in open violation of the expressed wording of the statute.

There is no doubt if these 63 landowners, who signed the articles of association, had been induced to do so by fraud or misrepresentation they could have taken proper proceedings to have had their names removed from the petition but the evidence shows that each man who signed the petition was afforded the opportunity of examining the articles of association and that he placed the number of acres he owned on said petition voluntarily. We think that they should not be allowed to come into court and say they did not understand. State ex rel. St. Louis Car Company v. Hughes, 348 Mo. 125, 152 S. W. 2d 193; Edmund S. Mills Corp. v. Stinebaker (Mo. App.) 67 S. W. 2d 821; 17 C. J. S. p. 487; Garden of Eden Drainage District v. Bartlett Trust Co. (Mo. Sup.) 50 S. W. 2d 627.

Again, we call attention to the statute above quoted: ''Any person having signed the articles of association shall have no right to have said proceedings dismissed as to him without the written consent of the majority in acreage of the owners who signed said articles.''

It will be noted that the court either finds the allegations in the articles of association to be true and incorporate the district or it shall dismiss said proceedings and adjudge the cost against the signers of said articles of association in proportion to the acreage represented by each. Therefore, the statute clearly provides that signers of the articles of association have no right to have said proceedings dismissed as to them. So we hold that the court erred in permitting these 63 signers of the articles of association to file exceptions to the incorporation of this district to have such proceedings dismissed and, in considering the

acreage of said owners in finding that a majority of acreage was not shown.

We think our findings on the first assignment of error of plaintiffs also covers plaintiffs' assignments of error numbered II, III, IV and V.

Assignment of error numbered VI raises a more serious question. The court found that the petitioners failed to prove that their plan will reclaim or protect the area in question.

Plaintiffs complain of this finding as being error. We will quote from plaintiffs' brief and argument.

"Appellants contend that there is no provision in the statutes pertaining to the formation of a levee district of this type that the petitioners must present a specific plan to the Trial Court and prove that it will reclaim or protect the area in question. If such procedure was necessary, certainly the statutes would have so provided. * * *"

With this contention, on the part of plaintiffs, we cannot agree. In reaching our conclusion that the trial court's finding was justified, we follow the ruling of the Supreme Court of this State in Garden of Eden Drainage Dist. v. Bartlett Trust Co., supra. In this case objectors claimed the statute was unconstitutional because it provided, "such objection or objections shall be limited to a denial of the statements in the articles of association." On page 629 of the opinion, after the court states what must be pleaded in the articles of association, the following law is declared:

"Defendants' claim is that, while all land and property owners are notified by publication of the time and place of hearing, and any property owner, who has not already petitioned for the drainage district and agreed to pay all necessary taxes, may appear at the hearing in the circuit court on the question of forming the drainage district and file his objections 'why the drainage district should not be organized and incorporated,' yet his objections are 'limited to a denial of the statements in the articles of association.' This, it is claimed, so narrows and limits a property owner's right to object as to amount to a practical denial of any hearing. The only objections, it is claimed, which the court will hear consist of a denial of (1) the name of the district, and how long it will run; (2) the boundary lines of the proposed district; (3) the names of the owners of the land in the district, and the description of that owned by each; (4) that the names of owners of certain lands are unknown; and (5) that those signing are willing and obligated to pay the taxes assessed against their respective lands. And it is insisted that the objecting landowners are thereby precluded from showing such vital facts as that (1) the land within the boundaries of the proposed district are not a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow; (2) that the signers of the articles are not the owners of a majority of the acreage of the lands embraced within the boundaries of the proposed

district; (3) that the lands of the objector are not lands of the character above mentioned; (4) that the district is not formed for the purpose of having the lands reclaimed and protected from the effects of water, for sanitary or agricultural purposes; and (5) that the drainage of the same is not necessary to the public health, convenience, or welfare, or a public utility or benefit, and that the corporation is not for a public purpose. These, it is said, are not among the things which are necessary to be stated in the articles of association.

"It seems to us that this places a too narrow construction on the statutes above mentioned. It is true that section 10743, Rev. St. 1929, provides that the petition or articles of association of the proposed drainage district shall contain a statement of the five matters first above enumerated; but said statutes do not say that such articles shall not contain other matters vital to the formation of the drainage district, or that a statement therein of such other facts is not necessary to constitute a good petition or articles of association. In fact, said section plainly implies that the articles of association to be presented to the circuit court, and which constitutes the first pleading in the case, shall state all the facts which the statute makes essential in order to form a drainage district; and to this end the statute provides, to wit: (1) That the lands within the boundaries of the proposed district are a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow; (2) that the signers of the articles are the owners of a majority of the acreage of the lands embraced within the boundaries of the proposed district; (3) that the lands of the district are lands of the character above mentioned; (4) that the district is formed for the purpose of having the lands reclaimed and protected from the effects of water, for sanitary or agricultural purposes; and (5) that the drainage of the same is necessary to the public health, convenience, or welfare, or a public utility or benefit, and that the corporation is for a public purpose. Some of these matters might be taken as implied by law without a specific averment.

"Now it will be seen that section 10745, supra, giving a property owner, who has not signed the articles of association, the right to appear and contest the matter on objections 'why such drainage district should not be organized and incorporated,' only limits such objections to a denial of the statements in the articles of association, which, as we have seen, covers all the vital facts made essential to the formation of a drainage district. In other words, the articles of association which constitute the first pleading must set forth, though informally, the basic facts necessary to a cause of action for forming a drainage district, and a failure in this respect would itself constitute a ground of objection. To this end the statute provides that the articles of association, which constitutes the first pleading, 'may be amended as any other pleading,' and that the objections shall be heard in a 'summary manner.' "

Thus the law is that the objections do not hold solely to a denial of the statements in the articles of association but covers all the vital facts made essential to the formation of a drainage district.

Under section 12492 R. S. Mo. 1939, repealed and reenacted in 1947, Vol. 2, p. 226, the law provides that a drainage district may be organized for the purpose of having swamp, wet or overflowed land reclaimed and protected from the effects of overflow and other waters, and for sanitary and agricultural purposes, or from the effect of wash or bank erosion or when the same may be conducive to public health, convenience or welfare or public utility or benefit, by levee, or otherwise, and for that purpose they may make and sign articles of association in which shall be stated; etc.

Under this statute the objectors had a right to show that the purpose for which this district was being organized would not reclaim or protect the lands in such drainage district from the effects of overflow or other waters.

The objectors, who did not sign the articles of association, offered substantial and convincing testimony that this proposed levee district was not feasible; that it would not protect the lands from overflow; that said district bordered on the state of Arkansas and that the lands in this district were much lower than the lands at the state line and that the waters from the river would back up and overflow the lands in the proposed district and would not protect and reclaim them from the damage of said overflow waters. We think the court was justified in finding, under the facts in the case, introduced by objectors, who did not sign the petition, that the proposed district would not and could not accomplish the purposes for which it was being formed.

Judgment affirmed. *Vandeventer, P. J.*, and *Blair, J.*, concur.