THE STATE EX REL. CONTINENTAL LIFE INSURANCE COMPANY v. FRANCIS H. TRIMBLE ET AL., JUDGES OF KANSAS CITY COURT OF APPEALS.—38 S. W. (2d) 1017.

Division One, May 21, 1931.*

*NOTE: Opinion filed at October Term, 1930, March 31, 1931; motion for rehearing overruled at April Term, May 21, 1931.

*Fred A. Boxley* and *Elmer B. Hodges* for relator.

*Burrus & Burrus* and *Mosman, Rogers & Buzard* for respondents.

RAGLAND, J.—This case comes to the writer for an opinion on reassignment. It is an original proceeding in certiorari wherein the relator seeks to have quashed, on the ground of conflict, the

opinion and judgment of the Kansas City Court of Appeals in the case of Harvey Burrus, Administrator, appellant, v. Continental Life Insurance Company, respondent, lately before that court on appeal from the Circuit Court of Jackson County. The rulings of the Court of Appeals and the facts on which they are based are shown by the opinion, which is as follows:

"This is a suit on an insurance policy, whereby John B. Lobb was insured against death or disability resulting directly, independently, and exclusive of all other causes from bodily injury effected solely through external, violent and accidental means and sustained by the insured in the manner following:

" 'Part One.

" ' (a) By the wrecking or disablement of any railroad passenger car or passenger steamship or steamboat, in or on which the insured is traveling as a fare-paying passenger; or, by the wrecking or disablement of any public omnibus, street railway car, taxicab, or automobile stage, which is being driven or operated, at the time of such wrecking or disablement by a licensed driver plying for public hire, and in which the insured is traveling as a fare-paying passenger and such injuries so sustained shall result in any of the specific losses set forth in this Part 1.

" ' (b) By the wrecking or disablement of any private automobile, motor-driven car or horse-drawn vehicle in which the insured is riding or drawn, or by being accidentally thrown from such automobile, car or vehicle.'

"While this policy was in effect the assured was riding on a motorcycle to the side of which there was attached a body designated for the carriage of a passenger and supported by a third wheel. The evidence indicated that the particular motorcycle was not constructed exactly the same as an ordinary motorcycle. It was so designed that it could not be operated at as high a rate of speed as the ordinary motorcycle, and also was designed so that the body could be attached thereto. A witness who was in the motorcycle business testified that the whole machine was usually designated as a 'side-car outfit.' The assured was upon the saddle of the motorcycle proper, and was operating the same when he received injuries which caused his death. The trial court sustained a demurrer to the evidence. The only question presented below was whether or not the assured came to his death from bodily injuries sustained by the wrecking of a 'motor-driven car' in which he was riding or drawn.

"Plaintiff has appealed.

"Respondent has cited cases wherein it is held that a motorcycle is not a 'motor-driven car.' [Salo v. North American Acc. Ins. Co. (Mass.), 153 N. E. 557; Anderson v. Life & Casualty Ins. Co., 197 N. C. 72, 147 S. E. 693; Laporte v. North American Acc. Ins. Co.,

161 La. 933; Perry v. North American Acc. Ins. Co. (N. J.), 138 Atl. 894.] In each of these cases the policy insured against injury or death caused 'by the wrecking or disablement of any private horse-drawn vehicle or private motor-driven car in which insured is riding or driving.' In each instance the motorcycle was a machine running on two wheels without side-car attachment. The Massachusetts and Louisiana cases were decided in 1926, the New Jersey case in 1927, and the North Carolina cases in 1929. The New Jersey and North Carolina cases approved what was said in the Massachusetts case almost *in toto*. All of the cases point out that the word 'car' is ordinarily used in speaking of an automobile, and that in ordinary parlance a motorcycle is not referred to as a car, but is spoken of as a motorcycle; that a motorcycle, having two wheels, is a machine more in the nature of a bicycle equipped with a motor power. It is also pointed out that the policy provided for protection if the assured rode *in or on* a railroad car or steamboat, but only for protection if the assured rode *in* a horse-drawn vehicle or a motor-driven car. In some of these cases it is stated that the motorcycle being supported by only two wheels, does not have the equilibrium of an automobile; that it is not supplied with bumpers or by a body in which the motorcyclist may drive or ride and for these reasons the use of the motorcycle is much more hazardous than the use of an automobile.

"We depart for the present from further consideration of these cases to determine whether or not the conveyance which was used in this case should be held, as a matter of first impression, to come within the provisions of this policy. In this case the conveyances mentioned in the policy are automobiles, motor-driven cars, and horse-drawn vehicles. It is certain that the conveyance is motor-driven. If it is a car it is one of the conveyances mentioned in the policy. We cannot infer that the term 'motor-driven car' was merely used to designate automobiles. Automobiles had already been specifically mentioned, and to hold that the term 'motor-driven car' was not intended to cover other forms of conveyances propelled by motor power would be to strike it from the policy. We cannot hold that 'motor-driven car' is a term which, in common parlance, refers to any specific kind of conveyance propelled by motor power. It might be contended that the term 'motor car' is ordinarily used as another name for automobile. With some plausibility it might be contended that the word 'car' is another name commonly used to designate the same kind of conveyance. But this policy specifically designates automobiles, using the term by which they are usually known. This is followed by a term which is not commonly used to refer to any particular form of conveyance, but which has been framed for the purpose of designating all forms of conveyances which may properly be called 'cars' and which are driven by motor. In Webster's International Dictionary

the word 'car' is defined thus: 'A vehicle moved on wheels. (a) in general, a carriage, cart, wagon, truck, etc. Rare in this use. (b) A chariot of war or of triumph; a vehicle of splendor, dignity or solemnity. Poetic. (c) Specif., some particular vehicle so-called, as an automobile, or locally in England, a four-wheeled hackney carriage. (d) A vehicle adapted to the rails of a railroad.. The vehicle used on street railroads or tramways are called cars in both Great Britain and the United States. In the United States car is the general term for the vehicles, whether for passengers or freight, used on other railroads, a qualifier being added to indicate the particular use or style; as, freight car, box car, platform car, dining car, parlor car, smoking car, etc., the cage of an elevator or lift. The basket, box or cage suspended from a balloon to contain passengers, ballast, etc.'

"We think it is fairly plain that any vehicle primarily intended for the transportation of persons or freight may be properly called a car. When a word has so many different meanings, it is always proper to look to the content and purpose of the instrument wherein it is used to determine the sense in which it was used in that instrument. The fact that certain courts have held that the word 'car' means automobile in an instrument referring to horse-drawn vehicles and motor-driven cars does not prove that those courts would have held that the term 'motor-driven cars' referred only to automobiles in an instrument in which 'motor-driven car' is mentioned in addition to, and therefore as an enlargement upon, the designation of automobiles.

"The cases relied upon by respondent made a point of the fact that a motor vehicle having only two wheels will not remain upright except when moving; whereas, the ordinary four-wheeled vehicle remains upright while stationary. That distinction, even if sound, could not apply to the instant case; because the conveyance which is the subject of our consideration will remain upright while standing. While we have pointed out that some of the distinctions made by the cases cited by respondent cannot apply in the instant case, yet there are other reasons given by the courts of Massachusetts, North Carolina, Louisiana, and New Jersey, which are applicable here. We have no way to tell what those courts would have held if the policies which they considered had specifically named automobiles and if the conveyances which they considered had been supported by three wheels so that they would remain upright at all times. We can only say that the reasons given by those courts for their decision so far as applicable to this case are not sufficient to convince us that the 'side-car outfit' in which the deceased was driving at the time of his injury was not a conveyance mentioned in the policy. Indeed, we are not called upon to decide whether we would follow the cases cited by the respondent if they were directly in point.

"It is our opinion that the 'side-car outfit' was a car. It is conceded that it was motor-driven. The term 'motor-driven car' is not the name commonly used to designate any known means of conveyance. It is a descriptive term and covers whatever it describes. It was not used to refer to automobiles only for the reasons already mentioned. Under the rule *ejusdem generis,* it is like unto automobiles and horse-drawn vehicles; because they are both vehicles running on wheels and are primarily intended for transportation.

"Respondent claims that appellant cannot recover because he did not ride *in* the motor-driven car. It is said that he who rides a motorcycle does not ride *in* it. To say that one is *in* a place does not imply that he is wholly or partially enclosed. A man may be in a city. This does not imply that the particular city is a walled town. We think that the provision requiring the assured to be *in* a motor-driven car means that he must be within the space or area which was intended to be occupied by the person or persons to be conveyed; because common experience teaches that it is ordinarily less dangerous to occupy that part of any conveyance that was intended to be occupied than otherwise. If the assured had met his death while being transported by automobile, we would not hesitate to hold that he could not recover if the evidence showed that at the time of his injury he was clinging to the spare tire on the back of the conveyance, or standing on the running board, or sitting upon the fender, or radiator hood or on the top, for this would be outside of the space intended to be occupied by the driver or passengers. On the other hand we should hold that he was in the car if he occupied the driver's seat, even though the body had been removed from the particular automobile. In such case he would be within the area primarily intended for occupancy.

"Respondent has called our attention to the fact that the policy provides for protection if the assured is injured by the wrecking or disablement of any railroad passenger car or steamship or steamboat, *in or on* which the insured is traveling as a fare-paying passenger. It is claimed that the use of the term 'in or on' at this place and the use of the word 'in' when referring to a motor-driven car excludes the idea that the insured was protected if he met his death while being conveyed by a motor-driven car unless he was in it in the sense that he was wholly or partially enclosed. The argument is not without plausibility. However, we think that if we should read an exception into the provisions of this policy because of such an obscure refinement, this would violate the principle that an instrument should be construed most strongly against him who prepared it. The insurance company prepares its policies in advance. It considers the risks which it is willing to cover and fixes the rates accordingly. The policyholder, if he takes a policy at all, takes it exactly as it has been

previously prepared by the insurance company. We think it would be a great injustice to permit the defendant to inject exceptions into the policy based upon fine discriminations which turn upon the use or omission of an apparently unimportant word. It is not unreasonable to require the insurance company to limit liability, if it so desires, by language of unquestionable meaning. If the insurance company sees fit to insert a provision in the policy that injuries while riding in side-car outfits or tricycles shall be excluded, it is at liberty to do so and the stipulation will be upheld by the courts. But it asks too much when its asks the courts to hold that assured who was being conveyed by a car which is motor-driven is not riding in a motor-driven car because at one place in the policy it used the word 'in' and in another part of the policy it used the phrase 'in or on.' "

As intimated in its opinion, the case before the Court of Appeals was one of first impression in this State, in so far as it called for a determination of whether a motorcycle with a side car attached is a "motor-driven car" within the meaning of those terms as used in a policy of insurance. That being true the court was entirely free to exercise its own independent judgment in arriving at what it deemed a proper construction, unless in doing so it violated general legal principles which under the decisions of this court were in the circumstances plainly applicable. And such is the relator's contention. It charges that the decision of the Court of Appeals violates two fundamental rules for the construction of a contract, as announced by this court, namely: (a) "where the words used in the contract are not ambiguous there is no room for construction;" and (b) "words used in a contract should be given their usual and popular meaning." (Many cases are cited in support of these general propositions.)

Applying the foregoing rules, relator says that the words "any private automobile, motor-driven car or horse-drawn vehicle in which the insured is riding or drawn," when taken in their usual and popular meaning are plain and unambiguous and should therefore be given effect accordingly, without any attempt at construction. In support of this pronouncement, it says that "automobile" and "motor-driven car" are synonymous. Such an interpretation strikes out "motor-driven car" as adding nothing to the content of the provision. The Court of Appeals, on the contrary, held in substance that all of the words should be given effect; that "automobile" was a specific term, designating a particular kind of motor vehicle; and that "motor-driven car" was a descriptive term of larger content which included motor-driven vehicles *ejusdem generis* with "automobile." Personally the writer thinks the latter interpretation the correct one, but be that as it may, this court has never held, so far as we have been able to find, that the method of con-

struction employed by respondents was erroneous when applied under the same or similar circumstances.

The Court of Appeals next held, in effect, that a motorcycle with a body attached for the carriage of a passenger is *ejusdem generis* with automobile: that it is of the same general kind of motor-driven car as an automobile. This holding relator says plainly violates the rule that the words used in a contract must be given their usual and popular meaning; that according to popular usage a motorcycle is never called a car. But the vehicle in question in the case which the Court of Appeals was considering was not merely a motorcycle. It was a motor vehicle with three wheels, and having attached to one side of the main frame a body for the carriage of a passenger; this body was called a side car; and the vehicle as a whole was popularly designated, according to the evidence before the court, as "a side-car outfit." If one were speaking of the vehicle with reference to the side car, he could very appropriately call it a motor-driven car; we are unable to say that the holding of respondents does violence to the rule invoked.

Relator is plainly impatient with a construction which enabled the court to say that "riding in a motor-driven car" includes "riding astride a motorcycle." In this connection it points out that "in" and "on" have been used discriminatingly in clauses "a" and "b," and designedly so for the purpose of defining precisely the risk covered. Under the first part of clause "a" the insured is covered while traveling "in or on" "any railroad passenger car or passenger steamship or steamboat;" under the latter part of clause "a" he is covered while traveling "in" "any public omnibus, street railway car, taxicab, or automobile stage;" and under clause "b" while riding or drawn "in" "any private automobile, motor-driven car or horse-drawn vehicle." If "in" and "on" are given the narrow and distinctive meanings contended for by relator, an insured is covered under the policy while riding *on* the top of a railroad passenger car, but not while riding *on* the top of a double-deck motor bus or on an open truck. Such an interpretation of the contract, when its intent and purpose as a whole are considered, would be absurd. Respondents held, in effect, that "in" and "on" were used interchangeably, and so has this court held under similar circumstances. [Schmohl v. Travelers' Ins. Co., 189 S. W. 597, approved in Turner v. Fidelity & Casualty Co., 274 Mo. 260, 202 S. W. 1078, 1081.]

Whether the Court of Appeals properly construed the contract of insurance in question in the case under review is not within our province to determine. It is sufficient to say that its opinion does not disclose any application of the general rules of construction inconsistent with our own holdings. Our writ is accordingly quashed. All concur.