Douglas FERGUSON, Sara Ferguson Sims, Shalin Ferguson, Shelina Ferguson, Sloane Ferguson, and Shawn Ferguson, Appellants,

v.

GATEWAY INSURANCE COMPANY, Respondent,

and

Mary Kramer, Noah Kramer, Martha Kramer, Defendants.

No. WD 63653.

Missouri Court of Appeals, Western District.

Dec. 28, 2004.

John Luther Young, Princeton, for Appellants.

Brian Todd Goldstein, Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

The central issue in this dispute in which Douglas Ferguson and his family have sued Gateway Insurance Company is whether or not a horse-drawn buggy is a "motor vehicle." Ferguson contends that it is; therefore, Gateway, his insurer, was obligated by its policy's uninsured motorist provisions to pay for injuries caused when in 2002 the car he was driving hit a horse-drawn buggy. Gateway's policy restricted uninsured motorist coverage to liability to its insured by the owner or operator of an "uninsured motor vehicle." The circuit court concluded that Kramer's horse-drawn buggy was not a motor vehicle and granted summary judgment for Gateway. We affirm.

Pursuant to its policy's general liability provisions, Gateway paid for repair of damage to Ferguson's car resulting from the collision, which occurred on February 22, 2002, on a Daviess County highway. The mishap occurred when 16–year–old Mary Kramer caused the horse pulling her buggy to turn left into the path of Ferguson's car. Gateway refused to pay for injuries to Ferguson's wife, who was a passenger in the car and who sustained fatal injuries when the crash threw the horse through the car's windshield. The record indicates that Ferguson had purchased only liability insurance from Gateway—not coverage of medical expenses.

Ferguson and his children sued Gateway, Kramer, and Kramer's parents, who owned the horse and buggy. They alleged wrongful death against the Kramers and breach of the insurance contract against Gateway. While the lawsuit was pending, the Fergusons settled the wrongful death claim with the Kramers, giving them a complete release in return for their payment of $33,500. The circuit court overruled Gateway's objection to the settlement and approved it. For the remaining two counts, Gateway and the Fergusons filed cross motions for summary judgment, and the court granted Gateway's motion. The Fergusons appeal.

■ Our review of the circuit court's summary judgment is essentially *de novo*. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corpora-*

*tion,* 854 S.W.2d 371, 376 (Mo. banc 1993). For summary judgment to be proper, the circuit court must determine that the parties are not disputing any issue of material fact and that the party seeking summary judgment is entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Finance,* 854 S.W.2d at 377. When we review an appeal of a summary judgment, we view the evidence in a light most favorable to the nonmoving party, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Finance,* 854 S.W.2d at 382.

■■■ In considering the Fergusons' dispute with Gateway, the circuit court's obligation was to effectuate the parties' intention as expressed in their contract, the insurance policy. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995). When contract language is clear, we discern intent from the document alone. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). The circuit court's duty in parsing the contract's language was to apply the plain and ordinary meaning of the words used—that is, the meaning that a person of average intelligence, knowledge, and experience would deem reasonable. *Farmland Industries, Inc. v. Republic Insurance Company,* 941 S.W.2d 505, 508 (Mo. banc 1997). The dictionary is a good source for finding the plain and ordinary meaning of contract language. *Shahan v. Shahan,* 988 S.W.2d 529, 535 (Mo. banc 1999).

Gateway's policy obligated it to pay Ferguson "compensatory damages which [Ferguson was] legally entitled to recover from the owner or operator of an 'uninsured motor vehicle.'" The policy defined an "uninsured motor vehicle" as a "land motor vehicle or 'trailer' of any type" that was not insured.

The policy did not define "motor vehicle," so the circuit court was obligated to apply the plain and ordinary meaning of the term. A motor vehicle is "an automotive vehicle not operated on rails; esp[ecially] one with rubber tires for use on highways." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1476 (1993). "Automotive" means something that "contain[s] within itself the means of propulsion: self-propelling." *Id.* at 148. Thus, the plain and ordinary definition of "motor vehicle" is a self-propelled vehicle as opposed to a vehicle propelled by an external power source, such as a buggy pulled by a horse or a wagon pulled by a child. Kramer's horse-drawn buggy was not a motor vehicle.

Several Missouri statutes pertaining to motor vehicles use the same definition. Missouri's Vehicle Financial Responsibility Law defines "motor vehicle" as "a self-propelled vehicle which is designed for use upon a highway" and lists several vehicles, all of which are motorized or powered by electricity. Section 303.020(5), RSMo 2000. Section 301.010(64), which relates to registering and licensing motor vehicles, defines "vehicle" as "any mechanical device on wheels, designed primarily for use, or used, on highways, except ... vehicles propelled or drawn by horses or human power." Numerous cases confirm that self-propulsion is the key ingredient to a motor vehicle. *Killian v. State Farm Fire and Casualty Company,* 903 S.W.2d 215, 218 (Mo.App.1995) (moped), and *State ex. rel. Toastmaster v. Mummert,* 857 S.W.2d 869, 871 (Mo.App.1993) (forklift), are two good examples.

The Fergusons assert that two Missouri cases from the 1930s support their argument, but both are inapposite. In *Burrus v. Continental Life Insurance Company,* 225 Mo.App. 1129, 40 S.W.2d 493, 495

(1930), the court determined that a motorcycle side-car was a "motor driven car" because it was motor-driven, ran on wheels, and was intended for use as transportation. The *Burrus* court stated that "[a motorcycle side car] is like unto automobiles and horse-drawn vehicles, because they are both vehicles running on wheels, and are primarily intended for transportation." *Id.* Seizing on this language, the Fergusons argue that horse-drawn vehicles are motor vehicles. The *Burrus* court mentioned horse-drawn vehicles, but only because the plaintiff's insurance policy specifically covered injuries caused "[b]y the wrecking or disablement of any . . . horse drawn vehicle in which the Insured is riding or drawn." *Id.* at 493. The decision did not turn on a proper definition of "motor vehicle." The Fergusons also cite *Hall v. Federal Life Insurance Company*, 71 S.W.2d 762 (Mo.App.1934), for the proposition that horse-drawn vehicles are cars. We acknowledge that a buggy is a "car," but not all cars are motor vehicles. The dictionary's definition of "car" includes "a vehicle moving on wheels," and lists carriages, carts, and wagons as examples. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 334. Moreover, the policy at issue in *Hall* protected against injuries sustained while the insured rode or drove a "horse-drawn . . . car." 71 S.W.2d at 762.

Because the Kramers' horse-drawn buggy was not a motor vehicle, the Fergusons are not entitled to uninsured motorist coverage under Gateway's policy. Thus, judgment as a matter of law was proper.

The Fergusons also assert that the circuit court abused its discretion by not granting them leave to amend their petition. Under Rule 55.33(a), leave of court to amend a pleading "shall be freely given when justice so requires." The circuit court's duty was to permit amendment of the pleadings liberally "to permit matters to be pleaded, which were overlooked or unknown when the action was originally filed." *Rhodus v. Wheeler*, 927 S.W.2d 433, 436 (Mo.App.1996).

We first brush aside Gateway's contention that we should not consider the Fergusons' point on the ground that the Fergusons raised it for the first time on appeal. Gateway's argument is wrong; the Fergusons did not raise the matter for the first time on appeal. Facing Gateway's motion for summary judgment, the Fergusons asked the circuit court for leave to amend their petition to add Douglas Ferguson as a defendant.

The circuit court did not abuse its discretion in denying the Fergusons leave to amend their petition to add Douglas Ferguson as a defendant while he still was a plaintiff. The circuit court cannot permit a party to sue himself. *See Townsend v. Townsend*, 708 S.W.2d 646, 647 (Mo. banc 1986) (explaining the prohibition of spouses from suing each other as resting on the reasoning that, because husband and wife are a single unit, allowing spouses to sue would be tantamount to party suing himself or herself).

For these reasons, the circuit court properly granted Gateway's motion for summary judgment. We affirm.

PATRICIA BRECKENRIDGE, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.