# SUPREME COURT OF MISSOURI
## en banc


| | |
|---|---|
| KEN ALLEN, JANET ALLEN, AND FRANKLIN QUICK CASH, LLC, | ) ) ) |
| Respondents, | ) ) ) |
| v. | ) )    No. SC93502 |
| CONTINENTAL WESTERN INSURANCE COMPANY, | ) ) ) ) ) |
| Appellant. | ) |

## APPEAL FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
The Honorable John B. Berkemeyer, Judge

### *Opinion issued May 27, 2014*

A payday and title lending company, Franklin Quick Cash, LLC, ("Franklin"), was sued for wrongfully repossessing a vehicle. In this subsequent action, Franklin has sued Continental Western Insurance Co. ("Continental Western") to recover the costs of litigating that wrongful repossession suit because Continental Western refused to provide a defense. Franklin's claim for costs is based on a commercial general liability insurance policy that covers liability for "accidents" but excludes coverage of liability for property damage "expected or intended" by the insured. The circuit court ruled that Continental Western had a duty to defend Franklin in the wrongful repossession suit and granted Franklin's motion for summary judgment. This Court holds that Continental Western did not have a duty to defend. Because Franklin intended to repossess the vehicle, there was no potential for coverage under the policy

at the outset of the underlying case. The circuit court's judgment is reversed, and judgment is entered for Continental Western.

## Factual Background

Stephanie Whipple filed the underlying lawsuit against Franklin.[1] Whipple claimed that Franklin unlawfully took possession of Whipple's 1998 Plymouth Voyager on two separate occasions. Whipple's original petition alleged, in two counts of conversion, that Franklin "intended to exercise control over" her Voyager and "deprived [her] of possession and control" without her authorization.

Franklin requested that Continental Western defend it in the Whipple lawsuit pursuant to a commercial general liability insurance policy that it had purchased from Continental Western for $250 per year. The policy covers liability for "property damage" resulting from an "accident," but it does not cover liability for "property damage" that is "expected or intended from the standpoint of the insured." Continental Western informed Franklin that Whipple's claims were not covered by the policy because its repossession of her Voyager was intentional, and Continental Western declined to provide a defense.

Whipple then amended her petition to add two counts of "Negligence." Both of the new counts alleged that the "aforesaid conduct was negligent"—but that was the only new allegation. The new counts otherwise "reallage[d] and incorporate[d] by reference" allegations from the two conversion counts. This included the allegation

_____

[1] Whipple sued Franklin and Ken Allen in the underlying lawsuit but not Janet Allen. For simplicity, this opinion refers collectively to all three of the plaintiffs-respondents in this case as "Franklin."

that Franklin "intended to exercise control over" Whipple's Voyager.[2]  After Whipple filed her amended petition, Franklin again requested a defense from Continental Western.  Continental Western again informed Franklin that Whipple's claims were not covered by the policy because Franklin's actions were intentional and declined to provide a defense.

Franklin retained other counsel and proceeded to defend the Whipple lawsuit without Continental Western.  Franklin moved to dismiss Whipple's amended petition for failure to state a claim on which relief can be granted.  The circuit court sustained the motion and dismissed Whipple's amended petition.  The court of appeals reversed the dismissal of Whipple's two conversion claims but affirmed the dismissal of the two negligence claims because the amended petition failed to state a claim for negligence. *Whipple v. Allen*, 324 S.W.3d 447, 451 (Mo. App. 2010).  The case was remanded for further proceedings on the two conversion claims, and the Whipple lawsuit is currently pending before the Circuit Court of Franklin County.

Following remand in the Whipple case, Franklin sued Continental Western in this subsequent action for wrongful refusal to defend.  Both parties moved for summary judgment.  Franklin claimed that Continental Western had a duty to defend because Franklin's alleged wrongful repossession of Whipple's Voyager was an "accident," potentially covered under the policy at the outset of the case.  Continental Western argued, in relevant part, that there was no potential for coverage under the

---

[2] Franklin admits this fact, that Whipple's amended petition states that Franklin intended to exercise control over the Voyager, in its statement of uncontroverted facts in support of its motion for summary judgment as filed with the circuit court.  (L.F. 80 ¶ 2.b.)

3

policy because it excluded coverage of liability for property damage "expected or intended from the standpoint of the insured."[3]

The circuit court ruled Continental Western owed a duty to defend and granted Franklin's motion for summary judgment. It entered judgment against Continental Western for the costs of litigating the Whipple lawsuit and the present lawsuit. This Court ordered transfer after the court of appeals issued an opinion and, therefore, has jurisdiction. *See* Mo. Const. art. V, § 10.

## Standard of Review

The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. The facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Only genuine disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) that the non-movant, after an adequate period for

---

[3] Continental Western also raised four other arguments: (1) that Whipple's loss of her Voyager was not "loss of use" and, therefore, not within the policy's coverage of "property damage;" (2) that Franklin's actions did not constitute an "accident" within the policy's coverage; (3) that another policy exclusion applied, which bars coverage for property damage sustained while in the "care, custody, or control" of the insured; and (4) that the circuit court erred in applying the "doctrine of reasonable expectations" to unambiguous policy language. This Court need not address these arguments, which Continental Western has also raised on appeal, because it holds the "expected or intended injury" exclusion prevented coverage and a duty to defend.

4

discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the non-movant's claim; or (3) that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense. Each of these three methods individually establishes the right to judgment as a matter of law. . . .

The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record.

*Goeriltz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011) (citations and internal quotation marks omitted).

## Analysis

An insurer owes two distinct duties to its insured: a duty to indemnify and a duty to defend. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999). The sole issue in this appeal is whether Continental Western had a duty to defend Franklin in the underlying Whipple lawsuit. This Court holds that Continental Western did not have a duty to defend. Even considering facts beyond the allegations set out in Whipple's amended petition that were reasonably apparent to Continental Western at the outset of the case, the "expected or intended injury" exclusion barred coverage of Whipple's claims against Franklin. Because there was no potential for coverage at the outset of the case, there was no duty to defend.

## I.  Duty to Defend

The insurer's duty to defend, though broader than its duty to indemnify, arises only when "'there is a potential or possible liability to pay based on the facts at the outset of the case.'" *Id.* In determining whether an insurer has a duty to defend, the

5

Court first compares the policy language with the allegations in the petition from the underlying lawsuit. *Id.* If the underlying petition alleges facts that give rise to a claim potentially covered by the policy, the insurer has a duty to defend. *Id.* at 170-71.

Beyond the facts alleged in the plaintiff's petition, the insurer also has a duty to defend if facts that are known to the insurer, or that are reasonably apparent to the insurer, at the commencement of the suit establish a potential for coverage. *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. banc 1968); *State ex rel. Inter-State Oil Co. v. Bland*, 190 S.W.2d 227, 229 (Mo. banc 1945); *Marshall's U.S. Auto Supply v. Md. Cas. Co.*, 189 S.W.2d 529, 530-31 (Mo. 1945). The insurer is not relieved of its duty to defend merely because the plaintiff in the underlying lawsuit pleaded his or her claims inartfully.[4] *Marshall's U.S. Auto Supply*, 189 S.W.2d at 531 (stating that the "condition of the pleadings" does not control the duty to defend).

However, the insurer's duty to defend arises only from potential coverage based on facts: (1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case. *Zipkin*, 436 S.W.2d at 754; *see also McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170 (stating that facts adduced at trial that the insurer could not have known at the outset of the case do not give rise to a duty to defend); *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. App. 2007) (holding that facts adduced solely from

---

[4] On the contrary, the insurer's defense may be at its most effective when the insured can obtain a dismissal of a defective petition with the assistance of the insurer's legal expertise, especially when it is known or reasonably apparent to the insurer at the outset of the case that the plaintiff may be able to amend the petition later to assert a valid claim that potentially is covered under the policy.

6

deposition testimony are not reasonably apparent at the outset of the case and do not give rise to a duty to defend). If there is no potential for coverage based on those facts, then the insurer has no duty to defend. *Marshall's U.S. Auto Supply*, 189 S.W.2d at 531 (holding that an insurer did not have a duty to defend based on facts that were reasonably apparent to the insurer at the outset of the case, although not alleged in the underlying petition, because regardless of those facts, there was no potential for coverage under the insurance policy).

## II. There Was No Potential for Coverage at the Outset of the Whipple Case

Franklin argues that Continental Western had a duty to defend it against the Whipple lawsuit because Whipple's damages resulted from the allegedly unlawful repossession of her Voyager, which it claims was an "accident" potentially covered by the policy. The court of appeals has already addressed the validity of Whipple's amended petition in the underlying case and concluded it does not state a claim for negligence, only for conversion. *Whipple*, 324 S.W.3d at 451. Accordingly, Franklin relies on facts not alleged in the petition: its allegedly mistaken beliefs that Whipple was in default when it repossessed the Voyager and that Franklin had a valid security interest.

Assuming Franklin made a mistake about Whipple's default or whether it had a valid security interest, those facts would have been reasonably apparent to Continental Western when Whipple filed her claims for conversion. Those additional facts are, therefore, relevant to whether Continental Western had a duty to defend. *See Zipkin*, 436 S.W.2d at 754; *Marshall's U.S. Auto Supply*, 189 S.W.2d at 531. However, even

7

considering those facts, there was no potential for coverage under the policy because Whipple sought recovery only for damages Franklin intended, which the policy unambiguously excluded. Therefore, Continental Western did not have a duty to defend. *See Marshall's U.S. Auto Supply*, 189 S.W.2d at 531.

### A. Contract Interpretation

The interpretation of an insurance policy is an issue of law, subject to *de novo* review. *Mendenhall v. Property and Casualty Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012). "[I]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . ." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). If language in an insurance policy is ambiguous, this Court resolves the ambiguity against the insurer-drafter. *Mendenhall*, 375 S.W.3d at 92; *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 211 (Mo. banc 1992). An ambiguity exists only when a phrase is "'reasonably open to different constructions.'" *Mendenhall*, 375 S.W.3d at 92.

Absent an ambiguity, however, Missouri appellate courts do not resort to canons of construction. *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525 (Mo. banc 1995). If the policy's language is unambiguous, it must be enforced as written. *Gavan*, 242 S.W.3d at 720. In addition, "[c]ourts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of

8

creating an ambiguity where none exists." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007). "Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Id.*

## B. The Insurance Policy

The purpose of a commercial general liability policy is for business owners to "protect against the unpredictable, potentially unlimited liability that can be caused by accidentally causing injury to other persons or their property." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998). It does not protect its insured from every risk of operating a business. *Id.* Because insurers have an interest in being certain they will not be liable for the insured's deliberate actions, liability insurance policies typically exclude coverage for injury or damage intended or expected by the insured. 7A *Couch on Insurance*, § 103:23 (3d ed. 2013). The commercial general liability policy at issue here states the following:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

 1. **Insuring Agreement**

  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

9

The insurance applies only to an "occurrence," which is defined as "an accident." "Property damage" is defined as physical injury to property or "loss of use" of property. The policy also states this:

### 2. Exclusions

This insurance does not apply to:

#### a. Expected Or Intended Injury

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
>
> . . .

In short, the plain language of the policy covers the insured's liability for an accident that causes property damage. Property damage includes the loss of use of property. The insurance explicitly does not apply if the insured expected or intended the property damage. The "expected or intended injury" exclusion is unambiguous and must be enforced as written. *See Todd*, 223 S.W.3d at 163.

### C. The Exclusion Barred Any Potential for Coverage

Franklin argues that Whipple's loss of her Voyager was caused by an accident covered by the policy because Franklin allegedly incorrectly determined it had a right to repossess the Voyager and did not intend to do so unlawfully. Regardless of whether these acts constituted an "accident" or whether the loss of the Voyager itself

10

could constitute "property damage," the "expected or intended injury" exclusion unambiguously barred coverage because Franklin intended to repossess the Voyager.[5]

In analyzing whether an "expected or intended injury" exclusion in a commercial general liability policy bars coverage, this Court has held that the insured must intend not only the act causing the property damage but also the resulting harm. *See Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 268-69 (Mo. banc 2013); *see also Am. Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. banc 1991) (stating that the insured must expect or intend the acts causing personal injury and the injury itself). In *HIAR Holding*, the plaintiffs in the underlying lawsuit sued the insured for sending them junk faxes in violation of the federal Telephone Consumer Protection Act (TCPA). *Id.* at 262. The "property damage" at issue in that case was caused by the receipt of those unlawful faxes. *See id.* at 262, 267-68. This Court held that the "expected or intended injury" exclusion did not apply because nothing in the record supported a contention that the insured sent the faxes intending to injure the recipients or violate the TCPA. *Id.* at 269.

Here, the record reflects that Franklin intended both the act of repossession and the resulting harm that is the subject of Whipple's lawsuit—the loss of her Voyager. Franklin admits that Whipple's claim is based on its intentional exercise of control over the Voyager in its statement of uncontroverted facts in support of its motion for

---

[5] Accordingly, this Court need not address whether Franklin's alleged mistake about the lawfulness of the repossession constitutes an "accident" or an "occurrence," and it need not address whether the loss of a vehicle can constitute "loss of use" and, therefore, "property damage" within the meaning of the policy.

summary judgment. By actually taking possession with intent to do so, Franklin also demonstrated its intent to deprive her of possession, which is the only harm asserted by Whipple. The policy defines "property damage" as "loss of use." Even assuming the loss of the Voyager itself could amount to "loss of use" within the meaning of the policy, the exclusion plainly barred coverage because Franklin intended both the act that caused Whipple's harm and also the harm itself.[6] *See HIAR Holding*, 411 S.W.3d at 269; *Landers Auto. Grp. No. One, Inc. v. Continental W. Ins. Co.*, 621 F.3d 810, 815 (8th Cir. 2010) (holding that an identical "intended or expected injury" exclusion prevented coverage of the insured's wrongful repossession of an automobile); *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1125 (7th Cir. 1998) (holding that a substantially identical exclusion prevented coverage of the insured's wrongful repossession of an automobile); *Am. Family Mut. Ins. Co. v. Mission Med. Grp., CHTD*, 72 F.3d 645, 648 (8th Cir. 1995) (holding that a substantially identical exclusion prevented coverage of the insured's intentional burning of a particular business, although the insured was mistaken in believing it performed abortions).

---

[6] Some courts have held that "loss of use" in a commercial general liability policy's definition of "property damage" does not include physical takings of property, only the loss of rental value. *See Collin v. Am Empire Ins. Co.*, 26 Cal. Rptr. 2d 391, 408-09 (Cal. Ct. App. 1994) (holding that conversion of property is not "property damage" because "'[l]oss of use' of property is different from 'loss' of property"); *see also M Consulting & Export, LLC v. Travelers Cas. Ins. Co.*, ___ F. Supp. 2d ___, No. RDB-13-1730, 2014 WL 793980, at *5 (D. Md. Feb. 27, 2014) (holding that a claim for conversion failed to plead "loss of use," and, thus, there was no "property damage," under substantially identical policy language); *Md. Cas. Co. v. Tex. Commerce Bancshares, Inc.*, 878 F. Supp. 939, 943 (N.D. Tex. 1995) (holding that a claim for conversion failed to plead "loss of use;" therefore, there was no "property damage" under substantially identical policy language). This Court need not decide whether the loss of Whipple's Voyager was "loss of use" within the meaning of the policy because, even if it was, the "expected or intended injury" exclusion barred coverage at the outset of the Whipple case.

Assuming Whipple's loss of her Voyager could be "loss of use" and, therefore, "property damage" within the meaning of the policy, Franklin necessarily intended to deprive Whipple of the vehicle's use by taking possession with the intent to exercise control. Whipple's loss of the Voyager is the only harm she has asserted in the underlying lawsuit and is the only harm that could arguably constitute "property damage" under the policy. Franklin intended both the act that caused Whipple's harm (repossession) and the harm itself (loss of the Voyager). *See HIAR Holding*, 411 S.W.3d at 268-69. Therefore, the "expected or intended injury" exclusion plainly barred coverage for Franklin's intentional acts at the outset of Whipple's lawsuit, and Continental Western did not have a duty to defend.

### Conclusion

The "expected or intended injury" exclusion unambiguously applies in this case because Franklin intended both the act of repossessing Whipple's Voyager and Whipple's resulting harm. There was no potential for coverage at the outset of the Whipple lawsuit, even considering the facts beyond the allegations in Whipple's petition that were reasonably apparent to Continental Western. Therefore, Continental Western did not have a duty to defend Franklin. *See Marshall's U.S. Auto Supply*, 189 S.W.2d at 531. As a matter of law, Franklin is not entitled to the costs of litigating the underlying Whipple lawsuit or this subsequent suit, and Continental Western is entitled to summary judgment. *See Goeriltz*, 333 S.W.3d at 452-53. Rule 84.14 directs that this Court "shall dispose finally of the case" and shall give judgment as the

13

Court "ought to give."  The circuit court's judgment is reversed, and judgment is entered for Continental Western.

_____
Zel M. Fischer, Judge

All concur.