

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| PROGRESSIVE PREFERRED<br>INS. CO., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD78915 |
| | ) | |
| RUSSANNE REECE AND<br>JEFF L. REECE, | ) | Opinion filed: June 7, 2016 |
| | ) | |
| Appellants. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF CLINTON COUNTY, MISSOURI
## THE HONORABLE J. BARTLEY SPEAR, JR., JUDGE

Before Division Two: Victor C. Howard, Presiding Judge,
Thomas H. Newton, Judge and Karen King Mitchell, Judge

Jeff and Russanne Reece appeal the trial court's summary judgment in favor of Progressive Preferred Insurance Company ("Progressive") on its petition for declaratory judgment finding no underinsured motorist coverage available to the Reeces under a policy issued to Mrs. Reece for injuries Mr. Reece sustained in a collision with another motorist while operating his John Deere Gator. The judgment is affirmed.

**Factual and Procedural Background**

The parties stipulated to the relevant facts in this case. On January 26, 2012, Jeff Reece was the owner and operator of a 2012 John Deere 855-D cross utility vehicle ("the Gator"). On

that day, while Mr. Reece was driving the Gator on Missouri Highway 33, he hand-signaled a left turn then attempted a left turn into a private driveway. A 2000 Chrysler Sebring driven by Francis Askren attempted to pass Mr. Reece as he was executing the left turn. The Askren vehicle collided with the left rear corner of the Gator, causing bodily injury to Mr. Reece. Francis Askren was 100% at fault for the accident.

Mr. Reece received an offer in the amount of $50,000, the liability limit on the Askren motor vehicle liability policy with Farmers Insurance. Mr. Reece's damages from the accident were in excess of $150,000.

Mr. Reece asserted a claim against his automobile insurer, Progressive, for underinsured motorist benefits for the injuries he sustained in the January 26, 2012 accident. Progressive had issued Policy No. 25111326-7 ("the Policy") to Mrs. Reece with effective dates of September 21, 2011, through March 21, 2012. The Policy insures a 1996 Saturn SL2, a 1999 Ford Explorer 4x4, and a 1983 Chevrolet K-20 pick-up. The Policy declaration page does not identify the Gator as a covered vehicle. The Reeces did not notify Progressive that they had purchased the Gator prior to January 26, 2012. There was no other insurance policy in place to cover Mr. Reece's operation of the Gator on January 26, 2012.

The Policy includes Underinsured Motorist ("UIM") Coverage of $100,000 per person and $300,000 per accident for each insured vehicle. An exclusion is contained in the UIM provision, which provides:

> **EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III(B).**
> Coverage under this Part III(B) will not apply:
> 1. to **bodily injury** sustained by any person while using or **occupying**:
> …

b. a motor vehicle that is owned by or available for the regular use of **you** or a **relative**. This exclusion does not apply to a **covered auto** that is insured under this Part III(B);

The Policy does not define "motor vehicle."

The Gator is not an "auto," a "covered auto," an "additional auto," or a "replacement auto" as those terms are defined in the Policy. The Gator is not a land motor vehicle of the private passenger, pick up body, or cargo van type. The Gator is a utility vehicle powered by a diesel engine. It is equipped with seatbelts and is not equipped with electric turn signals.

The Gator is not designed for operation principally upon public roads. After purchasing the Gator, Mr. Reed phoned the Missouri Highway Patrol and inquired what would be required to be allowed to drive the Gator on public roads. He was told to equip the rear of the Gator with a reflective orange triangle for slow moving vehicles and with an orange flag that extended above the Gator. Mr. Reece added a reflective orange triangle and an orange flag to his Gator. The Gator was available for Mr. Reece's regular use at the time of the accident on January 26, 2012.

Progressive brought a declaratory judgment action seeking a declaration that the Policy does not provide coverage for bodily injury caused by an underinsured motor vehicle as a result of the January 26, 2012 collision. It alleged that UIM coverage is barred under the Exclusion 1.b. because the Gator that Mr. Reece was operating at the time of the collision with the underinsured motor vehicle is considered a motor vehicle owned by Mr. Reece that is available for his regular use and that is not also a covered auto under the Policy. The Reeces answered and counterclaimed against Progressive seeking damages for breach of contract and vexatious refusal to pay under sections 375.296 and 375.420.[1]

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

3

The parties each filed motions for summary judgment based on the stipulated facts and terms of the Policy. Progressive argued that the Gator falls within the unambiguous definition of "motor vehicle" as it is used in the Policy's regular use exclusion, therefore, there is no coverage for the Reeces' UIM claim, and the counterclaim for breach of contract and vexatious refusal to pay should be dismissed. The Reeces argued in their motion for summary judgment that the term "motor vehicle" as used in the Policy is ambiguous, therefore, the construction most favorable to the insured and coverage must be adopted, and the exclusion does not apply. They also argued that a reasonable person of ordinary intelligence would infer the meaning of "motor vehicle" to be the same as that of "auto" as defined in the Policy as a "land motor vehicle of the private passenger type, pickup body, or cargo van type, designed for operation principally upon public roads" and because the Gator is not those things, it is not a motor vehicle, and coverage is not excluded.

Following argument on the motions, the trial court granted Progressive's motion for summary judgment and declared that there is no underinsured motorist coverage available to the Reeces under the Policy. It concluded that the policy is not ambiguous, and the regular use exclusion excludes underinsured motorist coverage. It further found that having modified the Gator with the addition of a reflective orange triangle and an orange flag for use on public roadways, Mr. Reece intended the Gator to be a "motor vehicle" under the Policy. The trial court denied the Reeces' motion for summary judgment and dismissed their counterclaim with prejudice. This appeal by the Reeces followed.

Appellate review of the grant of summary judgment is *de novo*. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 551 (Mo. banc 2014). The reviewing court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is

only proper if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 551-52. Facts set forth by affidavit or otherwise in support of a motion for summary judgment are accepted as true unless contradicted by the non-moving party's response to the motion. *Id.* at 552. On appeal, the record is reviewed in the light most favorable to the party against whom judgment was entered, and that party is afforded the benefit of all reasonable inferences. *Id.*

### UIM Coverage Exclusion

In their first and second points on appeal, the Reeces challenge the trial court's ruling that the Gator is a motor vehicle under the UIM coverage exclusion. The interpretation of an insurance policy is an issue of law that is reviewed *de novo*. *Id.* at 553. In construing the terms of an insurance policy, the reviewing court applies the meaning that would be attached by an ordinary person of average understanding if purchasing insurance. *Id.* at 553-54. "The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning." *Id.* at 554. If the language of an insurance policy is ambiguous, the court resolves the ambiguity in favor of the insured. *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).

"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Id.* (internal quotes and citation omitted). A court may not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists." *Allen*, 436 S.W.3d at 554 (internal quotes and citation omitted).

"The burden of showing that an exclusion to coverage applies is on the insurer." *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013). "Policy provisions designed to cut down,

5

restrict, or limit insurance coverage already granted, or introducing exceptions or exemptions must be strictly construed against the insurer." *Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 339 (Mo. App. W.D. 2013)(internal quotes and citation omitted). Absent an ambiguity, however, an insurance policy must be enforced according to its terms. *Id.* "Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Allen*, 436 S.W.3d at 554 (internal quotes and citation omitted).

In their first point on appeal, the Reeces contend that the trial court erred in ruling that the term "motor vehicle," as used in the UIM exclusion of the Policy, unambiguously includes the Gator. They assert that the term is reasonably susceptible to more than one construction in the context of the entire agreement, therefore, the term is ambiguous and should have been construed in favor of the insured and coverage.

"Well-established law holds that, when a policy does not define a term, a court is free to give the term a reasonable construction." *Wilson v. Am. Family Mut. Ins. Co.*, 472 S.W.3d 579, 588 (Mo. App. W.D. 2015). To ascertain the common meaning of a term, a court may look to a dictionary definition. *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999); *Risher v. Farmers Ins. Co.*, 200 S.W.3d 84, 88 (Mo. App. E.D. 2006).

The term "motor vehicle" is defined as "an automotive vehicle not operated on rails; esp[ecially]: one with rubber tires for use on highways." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1476 (1993). "Automotive" means "containing within itself the means of propulsion: self-propelling." *Id.* at 148. Finally, "vehicle" is defined as "a means of carrying or transporting something: conveyance" as "a carrier of goods or passengers specifically: motor vehicle" or "a piece of mechanized equipment." *Id.* at 2538. Thus, the plain

6

and ordinary definition of "motor vehicle" is a self-propelled carrier of goods or passengers or a self-propelled piece of mechanized equipment. Under the stipulated facts in this case, the Gator is a cross utility vehicle powered by a diesel engine and is equipped with seatbelts. It is self-propelled by a motor and a carrier of goods or passengers. An ordinary person of average understanding purchasing insurance would believe that the Gator is a motor vehicle.

This court used a similar definition of motor vehicle in *Ferguson v. Gateway Ins. Co.*, 151 S.W.3d 911, 913 (Mo. App. W.D. 2004), to find that a horse-drawn buggy was not an uninsured motor vehicle. In that case, the insured sought uninsured motorists benefits for the death of the his wife who sustained fatal injuries when a 16-year-old caused the horse pulling her buggy to make a left turn into the path of their car. *Id.* at 912. The policy defined the term "uninsured motor vehicle" as a "land motor vehicle or 'trailer' of any type" that was not insured but did not define the term "motor vehicle" as it was used in the definition. *Id.* at 913. This court considered the dictionary definition and found, "[T]he plain and ordinary definition of 'motor vehicle' is a self-propelled vehicle as opposed to a vehicle propelled by an external power source, such as a buggy pulled by a horse or a wagon pulled by a child." *Id.* The court noted statutes pertaining to motor vehicles that used the same definition as well as cases that confirmed that self-propulsion was a key ingredient to a motor vehicle. *Id.* (citing § 303.020(5)(Missouri's Vehicle Financial Responsibility Law); § 301.010(64)(statute related to registering and licensing motor vehicles); *Killian v. State Farm Fire & Cas. Co.*, 903 S.W.2d 215, 218 (Mo. App. W.D. 1995)(moped); and *State ex rel. Toastmaster, Inc. v. Mummert*, 857 S.W.2d 869, 871 (Mo. App. E.D. 1993)(forklift)).

The Reeces assert that a definition of "motor vehicle" within the Policy unambiguously excludes the Gator. In the Medical Payments Coverage section of the Policy, the term "motor

7

vehicle" is defined as "a land motor vehicle designed for use principally on public roads." The Reeces assert that this definition excludes the Gator because the Gator is not designed for operation principally on public roads. The Reeces acknowledge, however, that the definition of "motor vehicle" is expressly limited to the Medical Payments Coverage part of the Policy. They further acknowledge that they stipulated below that the term "motor vehicle" is not defined for purposes of the Underinsured Motorist Coverage section of the Policy.

Nevertheless, the Reeces argue that the Policy creates an ambiguity regarding the term "motor vehicle" since it is defined in one section and Progressive argues a different definition for the term in another section. Insurance policy provisions are interpreted by the court in the context of the policy as a whole and are not to be considered in isolation. *Long v. Shelter Ins. Cos.*, 351 S.W.3d 692, 696 (Mo. App. W.D. 2011). The General Definitions section of the Policy provides that bold-faced type words in the Policy are specifically defined terms: "The following definitions apply throughout the policy. Defined terms are printed in bold-face type and have the same meaning whether in singular, plural, or any other form." The General Definitions section does not contain a definition for "motor vehicle." The Medical Payments Coverage section of the Policy contains Additional Definitions, which expressly limits the use of the Additional Definitions to the Medical Payments Coverage section. The Additional Definitions begin, "When used in this Part II," signifying the Medical Payments Coverage section. The term "motor vehicle" is bolded in the Medical Payments Coverage section only, identifying that term as a defined term for that coverage part. Elsewhere in the Policy, including in the Underinsured Motorist Coverage section, the term "motor vehicle" is not bolded, signifying that no policy definition applies. The Reeces offer no legal authority for their claim that the use of a defined term in one section of a policy makes the policy ambiguous when that

8

term is not defined elsewhere in the policy. *But cf. Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 106 (Mo. App. E.D. 2009)(where language of a commercial general liability insurance policy clearly provided that the definition of "employee" under an endorsement was different than the definition of an "employee" under the form policy, policy was not ambiguous). The definition of "motor vehicle" in the Medical Payments Coverage section is clearly and unequivocally limited to that section and does not affect the rest of the Policy. It does not cause duplicity, indistinctness, or uncertainty in the meaning of the language in the Policy.

Next, the Reeces argue that the Policy is ambiguous because the definition of "underinsured motor vehicle" excludes "any vehicle or equipment…owned by you or a relative or furnished or available for the regular use of you or a relative." They assert that the term "motor vehicle" in the UIM coverage exclusion must be ambiguous if the definition of "underinsured motor vehicle" excludes equipment such as a Gator. This argument is flawed, however, because it is made on the premise that the Gator can only be equipment and not a vehicle. As discussed above, the Gator falls within the definition of vehicle. It is a carrier of goods or passengers or specifically a motor vehicle or a piece of mechanized equipment. More importantly, the definition of "underinsured motor vehicle" defines the *tortfeasor's* vehicle, or in this case, the Askren Sebring. By contrast, the term "motor vehicle" in Exclusion 1.b. refers to the vehicle the *insured* was using or occupying, or in this case, the Gator. The Policy is free to specify the exclusions related to the underinsured motor vehicle and the exclusions related to the vehicle used or occupied by the insured. Differences in the exclusions relating to the underinsured motor vehicle and the exclusions related to the vehicle used or occupied by the insured do not render the Policy ambiguous.

Next, the Reeces contend that *Hobbs v. Farm Bureau Town & Country Ins. Co. of Mo.*, 965 S.W.2d 194 (Mo. App. E.D. 1998), supports a finding of ambiguity in the Policy. The instant case is, however, distinguishable from *Hobbs*. In *Hobbs*, the plaintiff sought uninsured motorist coverage under his parents' automobile insurance policy for injuries received when he was struck by an uninsured motorist while he was operating a farm tractor on a public road. *Id.* at 195. The policy excluded coverage for "bodily injury to an insured while occupying a motor vehicle (other than the insured automobile) owned by the named insured, his spouse, or a relative, or through being struck by such a motor vehicle." *Id.* at 197. Unlike in the instant case, the policy in *Hobbs* defined the term "motor vehicle" in the exclusion. *Id.* at 198. It was defined as "a land motor vehicle or trailer" but excluded "a farm type tractor or any vehicle, equipment, or machinery designed for use principally off public roads while not upon public roads." *Id.* The insurer argued that a farm type tractor was excluded from the definition of motor vehicle except when the tractor was being used upon a public road, and the plaintiff argued that the policy language was ambiguous. *Id.* at 196, 198. The Eastern District found that the exclusion in the definition of motor vehicle regarding farm type tractor was ambiguous because it was susceptible to more than one meaning or interpretation. *Id.* at 198. It explained that the phrase "a farm type tractor or any vehicle, equipment, or machinery designed for use principally off public roads while not upon public roads" could be interpreted to exclude a farm tractor from the definition of motor vehicle regardless of whether or not it was operated on a public road. *Id.* The court adopted the interpretation most favorable to the plaintiff, finding that the provision excluding him from uninsured motorist coverage did not apply because he was not occupying a motor vehicle at the time of the accident. *Id.* In *Hobbs*, unlike in this case, the term "motor vehicle" was defined in the policy, and the court found an ambiguity in that definition. *Id.* In

10

this case, the term "motor vehicle" is not defined by the Policy for purposes of the Underinsured Motorist Coverage exclusion, and the court was free to give the term a reasonable construction.

Finally, after arguing extensively in the first point that the Policy terms are ambiguous, the Reeces contend in point two that the Policy clearly demonstrates the parties' intent that Mr. Reece's operation of the Gator be covered by UIM protection. They assert that the trial court erred in granting summary judgment predicated on a finding that Mr. Reece intended the Gator to be a "motor vehicle" when he equipped it with an orange triangle and flag for use on public roadways because such finding necessarily determined a disputed fact and the Policy itself expresses the opposite intent of the parties.

The guiding principle of contract interpretation is to ascertain the intent of the parties and give effect to that intent. *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005). The intent of the parties to a contract is presumed to be expressed by the ordinary meaning of the contract's terms. *Id.* Where the contract is ambiguous, requiring extrinsic evidence to determine the parties' intent, a question of fact exists preventing summary judgment. *Maritz Holdings, Inc. v. Fed. Ins. Co.*, 298 S.W.3d 92, 101 (Mo. App. E.D. 2009); *Mo. Consol. Health Care Plan v. BlueCross BlueShield of Mo.*, 985 S.W.3d 903, 908 (Mo. App. W.D. 1999).

In arguing that the Policy clearly shows the parties intent that the Gator is not a "motor vehicle" under the UIM exclusion, the Reeces again rely on the definition of "motor vehicle" in the Medical Payments Coverage section of the Policy and the use of the terms "vehicles and equipment" in the definition of "underinsured motor vehicle." As discussed above, those arguments fail. The term "motor vehicle" in the UIM coverage exclusion is unambiguous, and the Gator is a "motor vehicle" under the plain and ordinary meaning of the term. To the extent that the trial court may have erred in considering extrinsic evidence of the parties' intent, such

11

was harmless.  The trial court also correctly found that the Policy was unambiguous.  Summary judgment will be affirmed on appeal if it is correct as a matter of law on any ground.  *Kehrs Mill Trails Assocs.*, 251 S.W.3d 391, 396 (Mo. App. E.D. 2008).

The trial court did not err in ruling that the Gator was a motor vehicle under the UIM coverage exclusion and that UIM coverage is barred for the Reece's claim.  Points I and II are denied.

**Vexatious Refusal to Pay**

In their third point on appeal, the Reeces contend that the trial court erred in dismissing their counterclaim for breach of contract and vexatious refusal to pay on summary judgment. They assert that no reasons were given to independently dismiss the claim and the facts were disputed as to whether Progressive acted without reasonable cause or excuse.  To establish their claim for vexatious refusal to pay, the Reeces had to prove that (1) they had an insurance policy with Progressive, (2) Progressive refused to pay, and (3) the refusal was without reasonable cause or excuse.  *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006). However, where an insurer had no duty to pay under the insurance policy, there cannot be a claim for vexatious refusal to pay.  *See Arch Ins. Co. v. Sunset Fin. Servs., Inc.*, 475 S.W.3d 730, 735 (Mo. App. W.D. 2015)(where insurer had no duty to defend or indemnify under policy, there cannot be a claim for vexatious refusal to defend or indemnify); *Browning v. GuideOne Specialty Mut. Ins. Co.*, 341 S.W.3d 897, 903 (Mo. App. W.D. 2011)(where policy did not provide UIM coverage, plaintiffs not entitled to monetary judgment for vexatious refusal to pay); MAI 10.08. In light of the determination that UIM coverage is barred for the Reeces' claim, the trial court did not err in granting summary judgment in favor of Progressive on the Reeces' counterclaim for vexatious refusal to pay and dismissing the counterclaim with prejudice.  Point III is denied.

The judgment is affirmed.

_____
VICTOR C. HOWARD, JUDGE

All concur.