

# In the
# Missouri Court of Appeals
## Western District

NAVIGATORS INSURANCE COMPANY,

　　　　　Appellant,

v.

AMERICAN HOME ASSURANCE COMPANY AND ARCH INSURANCE COMPANY,

　　　　　Respondents.

**WD82118**

**OPINION FILED:**

**JUNE 25, 2019**

Appeal from the Circuit Court of Jackson County, Missouri
The Honorable David Michael Byrn, Judge

Before Division Three: Thomas H. Newton, Presiding Judge, Anthony Rex Gabbert, Judge,
Edward R. Ardini, Jr., Judge

### Introduction

Navigators Insurance Company ("Navigators") appeals the circuit court's grant of summary judgment to American Home Assurance Company ("American Home") and Arch Insurance Company ("Arch") ("Respondents" collectively) on Navigators' claim for attorneys' fees and defense costs for Navigators's defense of Respondents' insured whom Navigators claimed Respondents had a duty to defend. Navigators contends the circuit court erred in entering summary judgment in favor of Respondents because the potential for coverage existed under Coverage A and Coverage B of Respondents' policies at the time of tender. We affirm.

**Factual and Procedural Background**

KAMO Electric Cooperative, Inc. and its wholly-owned subsidiary, K-PowerNet, LLC, (KAMO collectively) were named as defendants in a federal class action suit filed November 2011 by Chase Barfield, Michael D. Biffle, Gina Biffle, and Dwight K. Robertson ("Barfield Plaintiffs" or "Plaintiffs"). On or about February 17, 2012, Barfield Plaintiffs filed a First Amended Complaint. Barfield Plaintiffs alleged they owned land in Missouri underlying electricity transmission or distribution lines and on or in which KAMO had installed or used, or announced plans for the installation or use of, fiber-optic cable. KAMO, as well as another defendant, were alleged to have illegally installed or used over 2,000 miles of fiber-optic cable throughout the state on class members' land that was subject only to a limited electric-utility easement or occupancy. According to the class complaint, KAMO was using fiber-optic cable installed on electric easement land to offer commercial communications services as a separate business distinct from the generation, transmission, or distribution of electricity. Barfield Plaintiffs claimed KAMO's use of their land for telecommunications purposes went beyond the easements granted to KAMO and that they were entitled to compensation for KAMO's use of the land.

Count I of the first amended class action complaint was a claim for declaratory judgment declaring KAMO had no legal right to control or use electric easement land to construct and operate a fiber-optic-cable network for commercial-communications purposes. It also requested a declaration that KAMO had no legal right or interest in the electric easement land beyond an electric power easement for the limited purpose of transmitting or distributing electricity.

Count II was a claim for trespass, alleging that KAMO's intentional and unauthorized entry upon the electric easement land constituted trespass. It requested damages proximately caused by

2

the trespass including the reasonable value of the use of the land or, at Barfield Plaintiffs' election, all revenues arising from the trespass or title to the fiber-optic cable and related equipment.

Count III was a claim for unjust enrichment, alleging that as a result of KAMO's intentional and unlawful use and occupation of class members' land, class members had been deprived of the rents, profits, and other benefits arising from KAMO's commercial use and occupation of the electric easement land for purposes other than transmission of electricity. The claim alleged that KAMO had been unjustly enriched and asked that KAMO be required to disgorge all sums received as rents, profits, and other benefits arising from their unlawful commercial use and occupation of the electric easement land for purposes other than transmitting or distributing electricity.

Count IV was a claim for injunctive relief, requesting KAMO be enjoined from continuing use of the fiber-optic cable on electric easement land.

On March 31, 2014, the federal court issued an Order after the parties filed cross-motions for summary judgment. Therein the court found it undisputed that KAMO Electric Cooperative created K-Powernet, LLC to operate commercial telecommunication companies because Missouri law does not permit electric cooperatives to operate commercial telecommunication companies. KAMO Electric Cooperative then leased to K-Powernet excess space on fiber optic cables that had been laid on KAMO's electric transmission easements. K-Powernet then used their space to transmit commercial telecommunications, returning the profits from their enterprise to their electric cooperative parent. KAMO Electric Cooperative had installed over 1,000 miles of fiber optic cable on class members' land which was being used for KAMO's internal, electric transmission business as well as K-Powernet's commercial telecommunications services to third parties.

The federal court defined the issue before it as a claim by Barfield Plaintiffs that KAMO's use of the electricity easements for the generation of commercial telecommunications exceeded the scope of the easements and deprived Plaintiffs and the class of the right to benefit from the use of their land as an information highway. The court synopsized the dispute as being "whether Missouri law requires third parties to compensate land owners when they operate this information highway under the landowners' real property for a purpose not permitted by a valid easement." The court defined Plaintiffs' theory of liability as KAMO Electric Cooperative licensing rights they did not have to subsidiaries and, as a result, the subsidiaries' use of Plaintiffs' land for commercial telecommunications purposes was unauthorized and, therefore, trespass. The court discussed that, under Missouri law, trespass occurs either by unauthorized entry on land or by exceeding the scope of any license to enter upon the land. (citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 977 (8th Cir. 2011)). The court reiterated settled Missouri precedent that, an easement does not grant complete ownership of land with the right to use it for all lawful purposes perpetually and throughout its entire extent, but, instead, is a right that extends only to one or more particular uses. (citing *Maasen v. Shaw*, 133 S.W.3d 514, 518-19 (Mo. App. 2004)). Further, the court stated that, even an easement granted in general terms without limitations as to its use is still one of unlimited *reasonable* use. (citing *Branson West, Inc. v. city of Branson*, 980 S.W.2d 604, 606 (Mo. App. 1998) (emphasis original)). The court narrowed the issue of Plaintiffs' trespass claim to whether the operation of a commercial telecommunications network was reasonable and necessary to KAMO Electric Cooperative's authorized use of their easements. The court found that, where easements expressly allowed KAMO Electric Cooperative to use and lease Plaintiffs' land for commercial telecommunications purposes, no trespass occurred.

4

KAMO disputed that trespass had occurred at all on the grounds that there was no interference with Plaintiffs' possession. The court found, as it had previously in denying a Motion to Dismiss filed by KAMO, that Missouri courts recognize claims based on violations of the manner and extent of usage rights provided by an easement regardless of whether those violations include actual physical injury. KAMO also disputed that trespass had occurred on the grounds that plaintiffs had no legal right to control the electromagnetic spectrum. The court concluded that, Plaintiffs were not claiming ownership of or the exclusive right to the electromagnetic spectrum but were challenging whether KAMO could use fiber optic cables physically installed on their land to transmit those wavelengths. The court stated that, "[a]lthough use of the spectrum may be free, use of the conduit in Plaintiffs' land is not. Outside that conduit, movement of light would not achieve Defendants' telecommunication purpose."

The court granted KAMO's motion for summary judgment, in part, limiting KAMO's potential liability and exposure to only 496 easements of the 3,691 for which the Barfield Plaintiffs initially alleged liability. This limitation was due to express provisions in some of the easement agreements allowing KAMO to use and lease the land for commercial telecommunications purposes. The court granted Barfield Plaintiffs' motion for summary judgment, in part, on their claims for trespass and unjust enrichment on specified easements (Category 1A-1C easements) where the easement provisions did not allow use and lease of the land for commercial telecommunications purposes.

In mid-April 2014, and after the aforementioned Order by the federal court establishing KAMO's liability, KAMO notified Respondents of Barfield Plaintiffs' claims. KAMO had initially tendered the claims to Navigators and demanded a defense and coverage under commercial general liability policies issued by Navigators. Navigators defended KAMO under a

5

reservation of rights and thereafter sought to recover from Respondents a portion of the expenses incurred in that defense; Respondents had issued commercial general liability insurance policies to KAMO that partially or wholly covered the time frame of KAMO's alleged infractions. On June 12, 2014, Navigators demanded that Respondents contribute to KAMO's defense. Respondents denied coverage for the claims in the Barfield suit, did not defend KAMO, and did not pay any money toward any defense costs incurred.

Mid-October 2014, KAMO notified the court that a tentative settlement had been reached between KAMO and Plaintiffs as to all claims against KAMO. The court preliminarily approved the settlement in December 2014. Final approval occurred June 2015. Meanwhile, the underlying suit went to jury trial on Plaintiffs' claims against KAMO's co-defendant. Because the federal district court had already granted summary judgment to Plaintiffs on their trespass and unjust enrichment claims, the trial was on damages only, which Plaintiffs submitted on the unjust enrichment claim alone.

On November 29, 2016, Navigators filed its Petition against Respondents alleging Respondents wrongfully refused to defend KAMO under the policies of insurance issued to KAMO, and that Navigators was entitled to equitable subrogation and equitable contribution for having solely defended KAMO.[1]

Following the parties filing a Joint Stipulation of Authenticity and Admissibility of documents on January 19, 2018, all parties filed cross-motions for summary judgment on the issue of Respondents duty to defend KAMO in the underlying case. On July 17, 2018, the court entered an Order and Judgment regarding those motions. The court concluded that, after comparison of

---

[1] KAMO assigned to Navigators all right, title, and interest in KAMO's claim for attorneys' fees and defense costs under Respondents' policies for the defense of KAMO in the Barfield Plaintiffs' lawsuit.

6

the First Amended Complaint to Respondents' insurance policies, Respondents owed no duty to defend KAMO. The court entered an Amended Order and Judgment on August 24, 2018, effectively stating the same. This appeal follows.

## Standard of Review

We review the grant of a summary judgment *de novo*. *Brehm v. Bacon Tp.*, 426 S.W.3d 1, 3 (Mo. banc 2014). We consider the record in the light most favorable to the party against whom judgment was entered and give the non-moving party the benefit of all reasonable inferences. *Id.* at 3-4. Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Allen v. Continental Western Ins. Co.*, 436 S.W.3d 548, 551-552 (Mo. banc 2014). A material fact in the summary judgment context is one from which the right to judgment flows. *Id.* at 552.

## Point I – Coverage A

In Navigators's first point on appeal, Navigators contends the trial court erred in entering summary judgment in favor of Respondents on the issue of Respondents' duty to defend KAMO against Barfield Plaintiffs' claims. Navigators argues there is no genuine dispute that the potential for coverage existed under Coverage A of Respondents' insurance policies because the pleadings, record from the Barfield lawsuit, and the facts known and reasonably available to Respondents at the time the Barfield lawsuit was tendered for defense, conclusively established that Barfield Plaintiffs were alleging loss of use of tangible property and that KAMO was liable for the monetary equivalent of the damage sustained for such loss of use, all of which resulted from a covered "occurrence" under Respondents' policies of liability insurance. Navigators contends that the court erroneously focused only on the allegations in the Barfield Plaintiffs' complaint to determine

7

the facts known to the insurer at the outset of the case, and ignored the substantial record that had

been developed at the time the claim was tendered to Respondents.

> An insurer's duty to defend is broader than its duty to indemnify. The duty to defend arises only when there is a possibility or potential for coverage at the outset of the case. The duty to defend is determined by comparing the insurance policy language with facts: (1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend. Even if the plaintiff bringing a claim against the insured initially pleads the 'wrong' cause of action, or one that is likely to be subject to a motion to dismiss, if, at the time the claim is made, facts are known to the insurer or could reasonably be ascertained by the insurer that would potentially put the claim within the scope of the policy, the insurer must defend the insured. To extricate itself from the duty to defend the insured, the insurance company must prove that there is no possibility of coverage.

*Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. banc 2016) (internal quotation marks and citations

omitted).

Barfield Plaintiffs alleged the following, in part:

- Defendants have illegally installed or used over 2,000 miles of fiber-optic cable throughout the state on Class Members' land that is subject only to a limited electric-utility easement or occupancy ('Electric Easement Land'). Defendants are using the fiber-optic cable installed on Electric Easement Land to offer commercial-communications services as a separate business distinct from the generation, transmission, or distribution of electricity…

- As owners of Electric Easement Land they are entitled to compensation for Defendants' improper commercial use and occupation of their land for purposes other than the transmission or distribution of electricity; disgorgement of the revenues wrongfully flowing to Defendants from that improper use and occupation; and declaratory relief; …

- On information and belief, Defendants made the business decision to forgo a time-consuming negotiation and compensation process to obtain the necessary easement rights, and instead deliberately undertook to disregard Class Members' property rights and install or operate on their land a fiber-optic network for purposes other than those permitted by the limited Electric Power Easements.

- Defendants knew or should have known that they held or used easements valid only for electric-transmission purposes.

- Defendants' intentional and unauthorized entry upon Named Plaintiffs' and other Class Members' Electric Easement Land for construction, installation, maintenance, lease, or other operation of a fiber-optic-cable network for commercial-communications purposes constitutes a present and continuing trespass.

Respondents' insurance policies contain the following policy language:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY**

**DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which is insurance does not apply …

    b.  This insurance applies to 'bodily injury' and 'property damage' only if:

        (1) The 'bodily injury or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

        (2) The 'bodily injury' or 'property damage' occurs during the policy period; and

[…]
2.  **Exclusions**

    This insurance does not apply to:

    a.  **Expected or Intended Injury**

        'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the reasonable force to protect persons or property.

9

[…]

**SECTION V – DEFINITIONS**

[…]

**3.** 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[…]

**13.** 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[…]

**17.** 'Property damage' means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other medial which are used with electronically controlled equipment.

[…]

Navigators contends on appeal that there was a potential for coverage under Coverage A because KAMO's trespass was an "occurrence" that resulted in "property damage." Navigators argues that the signals traveling through the cables, as well as the cables themselves, constitute "tangible property" within the meaning of Respondents' policies. Navigators argues that KAMO

maintained that they intended no harm and acted under the belief that they had the right to use the easements for telecommunications purposes.

In its Memorandum in Support of Motion for Partial Summary Judgment regarding Respondents' duty to defend, Navigators argued to the trial court that Barfield Plaintiffs' Petition claimed damages for loss of use and property damage accidentally caused, and cited cases Navigators believed supported their claim that telecommunications trespasses and loss of use of telecommunications lines constituted "property damage." Navigators also contended Barfield Plaintiffs alleged loss of use of "tangible property." Navigators further contended that, "there is information suggesting that damages arose from an occurrence," citing case law finding an "occurrence" where the insured disputed harm was intended. Navigators argued that, at the time the claim was tendered, there was no evidence or suggestion that KAMO had any knowledge prior to the lawsuit that their use of the easement for fiber optic cables would violate the rights of the Barfield Plaintiffs and, therefore, the exclusions within the policies for knowing violations of rights of another would not apply.

Respondents dispute a duty to defend against Barfield Plaintiffs' claims arguing coverage is only available for "damages" from bodily injury, property damage, and personal or advertising injury resulting from an "occurrence," and those types of damages were not claimed by Plaintiffs. Respondents contend that the damages sought were in the form of unpaid rents or profits wrongfully obtained by KAMO. Further, the underlying lawsuit did not allege property damage, physical injury to the land, or loss of use of the land itself. Respondents also contend that the Barfield Plaintiffs alleged that KAMO's actions were intentional, not accidental, and accidental damage to property is necessary to show there has been an "occurrence" triggering coverage. Further, exclusions in the policies for intentional acts, namely the "Expected or Intended Injury"

11

and the "Knowing Violation of Rights of Another" exclusions, bar coverage even if other terms of the insuring agreements are satisfied.

In its Judgment granting Respondents' motions and denying Navigators' motion, the trial court found that, with regard to Coverage A, because the First Amended Complaint does not plead any injury or loss of use of *tangible* property, an essential component of Coverage A was not satisfied such that a duty to defend would be triggered. The court concluded that, "because the Barfield Plaintiffs did not allege in their First Amended Complaint that the Barfield Defendants physically injured their *tangible* property, and because said Plaintiffs did not assert that they suffered a loss of use of their *uninjured tangible* property in their Complaint, the Court finds that [Respondents] had no duty to defend the Barfield Defendants under Coverage A."

On appeal, Navigators does not dispute the trial court's reliance on *Gilbert v. K.T.I.*, 765 S.W.2d 289, 293 (Mo. App. 1988), which discussed that easements are intangible. Navigators also does not appear to dispute that the court reached the proper conclusions with regard to Coverage A when comparing the policy language with Barfield Plaintiffs' petition. Navigators's contention appears to be that the court erred by comparing *only* the petition to the policy language and failed to compare statements within the federal court's summary judgment order (rendered more than two years after litigation commenced in the matter and prior to Respondents being notified of KAMO's claim for coverage) with policy language and case law that might suggest Barfield Plaintiffs' allegations actually regarded *tangible* property.[2] We find no error.

---

[2] We note that, while Navigators argues on appeal the same case law it argued to the trial court to support its interpretation of Respondents' policies, we find nowhere in the underlying record that Navigators argued to the court when it submitted the issues for summary judgment that the court was *required* to look outside Barfield Plaintiffs' petition and Respondents' policy language to reach a determination as to Respondents' duty to defend.

In analyzing Respondents' duty to defend under Respondents' policies, the court identified Barfield Plaintiffs' claims as being that KAMO's trespass was in the form of expansion of its easement. The court, citing *Gilbert*, found that Plaintiffs' claims, therefore, could not be for the loss of use of tangible property because an easement is intangible. We find that the trial court properly characterized Barfield Plaintiffs' claims and did not err in concluding Respondents had no duty to defend under Coverage A because there was no claim for loss of, or damage to, tangible property.[3] Although this is dispositive of the issue of Respondents duty to defend under Coverage A, because Navigators claims that information in the record external to Barfield Plaintiffs' petition reveals a potential for coverage under Respondents' policies, we comment briefly.[4]

For Respondents to have had a duty to defend under Coverage A, "property damage" must have resulted from an "occurrence." An "occurrence" under Coverage A requires an "accident." Barfield Plaintiffs alleged that KAMO's trespass was intentional. Navigators argues there was potential for coverage due to an accidental "occurrence" because the record as a whole shows that KAMO intended no harm. In support of their claim that the record shows no intent to harm, Navigators 1) cites to case law finding that no intent to harm can support accidental usage rather than trespass, 2) cites to KAMO's Answer denying that "[KAMO's] intentional and unauthorized entry upon Named Plaintiffs' and the other Class Members' Electric Easement Land for

---

[3] Navigators focuses on the physical property (cables) KAMO installed on the easement, as well as signals traveling through the cables, to argue that Plaintiffs made a claim for harm to or loss of use of "tangible property." Yet, Plaintiffs never claimed ownership of the cables or the signals, only the land upon which the easement was granted for electricity transmission. Barfield Plaintiffs claimed KAMO should not use cables physically installed on Plaintiffs' land for a purpose they did not obtain an easement for.

[4] Nevertheless, because the record available at the time KAMO's claims were tendered to Respondents supports the conclusions reached by the court, we need not address Navigators's claim that the trial court had a duty to consider both the petition and the underlying record.

13

construction, installation, maintenance, lease, or other operation of a fiber-optic-cable network for commercial-communications purposes constitutes a present and continuing trespass," and 3) points to KAMO's Affirmative Defense that KAMO's use of fiber optics imposed no additional burden to the easement. Navigators argues that, because this was information Respondents should have been privy to at the time KAMO tendered Barfield Plaintiffs' claims to Respondents, the court erred in not considering this information when determining Respondents' duty to defend.

Yet, had the court been required to accept the aforementioned as transforming Plaintiffs' claims from intentional trespass to some form of accidental infringement, the court would have also had to consider KAMO's affirmative defenses (filed July 19, 2012) that "the KAMO Defendants' use of fiber optics is *intangible* and results in no physical interference with the Plaintiffs' property," and "the KAMO Defendants' use of fiber optics is *intangible* and imposes no additional burden to the easement." (Emphases added). Accepting these averments when considering the possibility of coverage would have solidified the ultimate conclusion reached by the court that, there were no allegations of physical injury to or loss of use of *tangible* property. The court would have also considered that, early in the litigation (July 27, 2012) KAMO filed a motion for summary judgment and requested the court designate its order denying that motion for immediate appeal. KAMO contended that the court's order involved a controlling question of law regarding whether Missouri recognizes a per se cause of action for *intangible* trespass when the alleged tortfeasor's use exceeds that allowed by written easement, even if that use is the same as, and incidental to, a permitted use and there is no physical or tangible injury to or interference with the plaintiff's property or plaintiff's use of that property. Likewise, on February 14, 2013, KAMO filed a joint motion seeking to exclude Plaintiffs' expert, stating: "this case … only involves the *intangible* use of excess fiber optic capacity and nothing else …." (Emphasis added). Hence, had

14

the court looked outside the petition in considering whether damage to or loss of tangible property had potentially occurred thereby triggering coverage, the court would have discovered KAMO's concessions that only intangible property was involved in the suit.[5] These revelations would have supported the court's conclusions regarding Respondents' duty to defend under Coverage A.

Navigators's first point on appeal is denied.

## Point II – Coverage B

In Navigators's second point on appeal, Navigators contends the circuit court erred in entering summary judgment in favor of Respondents on the issue of Respondents' duty to defend KAMO under Coverage B of Respondents' policies. Navigators argues that the pleadings, record, and facts known and reasonably available to Respondents at the time of tender conclusively established that Barfield Plaintiffs were alleging KAMO, as "owners" of the electricity easements, interfered with Plaintiffs' right to occupy the easements for other purposes, potentially creating coverage under Coverage B.

Respondents' insurance policies contain the following policy language:

**COVERAGE B PERSONAL AND ADVERTISING INJURY**

**4. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty

---

[5] In interrogatories, KAMO admitted to building excess fiber capacity into its fiber-optic network with the intent of marketing that excess capacity to commercial customers. KAMO further alleged in its Answer to Plaintiff's claims that the claims "may fail because of the doctrine of adverse possession." Again, had the court considered this pleading it might have justifiably concluded that KAMO's claims of an accidental occurrence were refuted by KAMO's own pleadings, as the "hostile" element required for adverse possession requires an intent to occupy disputed property and possess as his or her own, exclusive to the rights of all others. *Devore v. Vaughn*, 504 S.W.3d 176, 181-182 (Mo. App. 2016).

to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply ...

5.  **Exclusions**

This insurance does not apply to:

a.  **Knowing Violation of Rights of Another**

'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.
[…]


**SECTION V – DEFINITIONS**

[…]

14.  'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.  The use of another's advertising idea in your 'advertisement'; or

g.  Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.
[…]

The circuit court concluded the following with regard to the potential for coverage under Coverage B:

> Under Coverage B, in order to commit a personal and advertising injury, a wrongful eviction from, wrongful entry into, or invasion of right of a private occupancy of a **room, dwelling, or premises** that a person occupies must occur (emphasis added). In order for coverage to attach, said conduct must occur by or on behalf of the **room, dwelling, or premises' owner, landlord, or lessor** (emphasis added). This Court does not find that the Barfield Defendants, as easement holders, fall under the categories of owner, landlord, or lessor of the Barfield Plaintiffs' land. Nor does the Court find that the First Amended Complaint pleads facts which would sufficiently assert that the Barfield Defendants' lease of the easements falls under the definition [of] a 'room, dwelling, or premises." …

> Thus, having duly reviewed the First Amended Complaint and compared the pleading to the insurance policies at issue, the Court finds that the Barfield Plaintiffs did not aver that the Barfield Defendants committed a 'personal and advertising injury' as contemplated in Coverage B of the Commercial General Liability coverage Forms included in Defendants American Home and Arch Insurance's polices.

Here, Navigators makes no claim that the trial court misinterpreted the policy language or that the policy language is ambiguous. Navigators argues that Missouri courts have recognized that trespass beyond the scope of an easement is recognized harm (the very premise of Barfield Plaintiffs' suit), and cites an unpublished Ohio case, *Meyers Lake Sportsman's Club, Inc. v. Auto-Owners Mutual Insurance Co.*, 2013 WL 3787437 (Ohio Ct. App. July 15, 2013), for the proposition that Barfield Plaintiffs' allegation that KAMO exceeded the scope of its easement was a claim that easement "owner" KAMO invaded Barfield Plaintiffs' rights to private occupancy of the easement, resulting in "personal injury" to Plaintiffs.

Meyers Lake Sportsman's Club and Meyers Lake Fish Dock ("Meyers Plaintiffs" collectively) brought suit seeking a determination that it had an *implied* easement to use Meyers Lake Preserve's property (a lake), and that Meyers Lake Preserve was depriving Meyers Plaintiffs of the use of that easement. *Id.* at *5. Meyers Lake Preserve disagreed an implied easement

17

existed and counterclaimed that use by Meyers Plaintiffs of Meyers Lake Preserve's property constituted trespass and conversion, depriving Meyers Lake Preserve of its own right of occupancy and use of the premises. *Id.* Sportsman's Club's insurer sought a declaratory judgment that it did not owe a duty to defend or indemnify its insured for such counterclaims. *Id.* The trial court disagreed, holding that there were "occurrences" as such term was defined in the subject policies and that alleged personal injury to the Meyers Lake Preserve was sufficient to trigger the duty to defend. *Id.* An Ohio appeals court affirmed holding:

> Because the [insured's] club has an implied easement to use Meyer's Lake, and the Preserve likewise has a right of occupancy of Meyers' Lake, the alleged personal injury suffered by the Preserve was in fact an alleged invasion of the Preserve's property right of private occupancy which was committed by the [insured.] Moreover, the asserted loss of use of the premises that allegedly was caused by appellees constitutes property damage.

*Id.* at *5.

Even if *Meyers* were binding on this court, and it is not, the case before us is distinguishable. In *Meyers*, the counterclaims expressly pled loss of use of tangible premises; there was no contention that the insurer was being asked to defend against expansion of an established easement with the expansion involving intangible property. Barfield Plaintiffs' never claimed loss of use of their tangible land; their claim was for lost rents or profits resulting from KAMO's improper expansion of its easement.

Navigators seems to suggest the Ohio court's holding stands for the proposition that, because the Ohio court treated Plaintiffs' claim to an implied easement as "owners" invading Meyers Lake Preserves' right of private occupancy, this court must find KAMO an equivalent "owner" of Barfield Plaintiffs' land who invaded Barfield Plaintiffs' right of private occupancy when it expanded the easement. We cannot. Sportsman's Club's claim to an implied easement

18

alleged the right to use, and not be excluded from, the tangible property of another that, if proven, Meyers Lake Preserves would have no authority to interfere with. *See Dohogne v. Counts*, 307 S.W.3d 660 (Mo. App. 2010) (upon proof of an implied easement, landowner was prevented from maintaining a fence or barrier or in any way obstructing use of landowner's own gravel driveway for ingress to or egress from implied easement holder's property). Here, it is undisputed that KAMO had no rights to Plaintiffs' land outside the parameters of the express easement. Even if we were to accept KAMO's assertion that it "owned" the easement, KAMO certainly owned nothing outside the easement. Barfield Plaintiffs' claimed KAMO trespassed *outside* the easement.[6] Hence, the court did not err in concluding that KAMO, as easement holder, was not "owner" of the "premises" claimed by Barfield Plaintiffs to have been trespassed upon. Consequently, the circuit court did not err in concluding that no potential for coverage existed under Coverage B of Respondents' policies because no personal or advertising injury was alleged by Barfield Plaintiffs.

Navigators's second point on appeal is denied.

## Conclusion

The circuit court did not err in entering summary judgment in favor of Respondents on the issue of Respondents' duty to defend KAMO. There was no potential for coverage under Coverage A of Respondents' insurance policies because there was no claim by Barfield Plaintiffs for loss of, or damage to, tangible property. Further, there was no potential for coverage under Coverage B of Respondents' insurance policies because there was no claim by Barfield Plaintiffs for personal or advertising injury.

---

[6] Navigators acknowledges on appeal that "Barfield Plaintiffs have alleged injury arising out of the KAMO Defendants', as easement holders, wrongful entry into the scope and space outside its easement."

19

The circuit court's judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.